1
2
3
4
           The Honorable Ronald B. Leighton
           Magistrate Judge Theresa L. Fricke
5
6          **UNITED STATES DISTRICT COURT**
      **WESTERN DISTRICT OF WASHINGTON**
7                  **AT TACOMA**

| | |
|---|---|
| 8   R.M., Individually, | NO. 18-cv-05387-RBL-TLF |
| 9             Plaintiff, | |
| 10           v. | **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56(c)** |
| 11   STATE OF WASHINGTON, SHERYL ALLBERT, ALLISON BERGLIN, | |
| 12   KEVIN BOVENKAMP, B. BRAID, DIEGO LOPEZ de CASTILLA, JAMES | |
| 13   J. EDWARDS, DALE FETROE, G. STEVEN HAMMOND, J. DAVID | **NOTED FOR : DECEMBER 14, 2018** |
| 14   KENNEY, MARY KEPPLER, EDITH KROHA, ERIC LARSEN, KENNETH | |
| 15   LAUREN, FRANK LONGANO, SHERI MALAKHOVA, KEN E. MOORE, | |
| 16   SHIRLEE M. NEISNER, MARTHA NEWLON, JOAN PALMER, KELLY | |
| 17   REMY, JON REYES, DALE ROBERTSON, F. JOHN SMITH, | |
| 18   KENNETH SAWYER, BO STANBURY, and DOES 1-10, | |
| 19            Defendants. | |

20
21                <u>**MOTION FOR SUMMARY JUDGMENT**</u>

22        R.M., an offender currently incarcerated at the Clallam Bay Corrections Center, asserts an

23 Eighth Amendment based 42 U.S.C. §1983 action alleging the Defendants were deliberately

24 indifferent to his medical needs. In particular, he alleges that all the members of the Department of

25 Corrections ("DOC") Care Review Committee ("CRC") violated his Eighth Amendment rights

26

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT PURSUANT TO
RULE 56(c) - 18-cv-05387-RBL-TLF
        1
      ATTORNEY GENERAL OF WASHINGTON
           Torts Division
        7141 Cleanwater Drive SW
           PO Box 40126
       Olympia, WA 98504-0126
         (360) 586-6300

1   when the committee denied his request for a urology referral on January 21, 2015. He also pleads a

2   State medical malpractice claim based on the same facts. No proof of medical negligence exists, let

3   alone the requisite "deliberate indifference" required for a §1983 claim. Furthermore, the State is not

4   a "person" and is immune from §1983 suits. All of the individual Defendants have qualified

5   immunity because R.M cannot demonstrate conduct by any one of them that violated a clearly

6   established constitutional or statutory right he possesses.[1]

7

8   **EVIDENCE RELIED UPON**

9       1.   Declaration of Dr. James Edwards ("Edwards Decl.") and attachments;

10      2.   Declaration of Jo Ella Phillips ("Phillips Decl.") and attachments;

11      3.   Declaration of Julie Mason ("Mason Decl.") and attachment;

12      4.   Declaration of Jennifer Meyers ("Meyers Decl.") and attachment;

13      5.   Declaration of Kevin Bovenkamp "Bovenkamp Decl.") and attachments;

14      6.   Declaration of Wei Weller ("Weller Decl.") and attachments;

15      7.   Declaration of Michael Holthe ("Holthe Decl.") and attachment;

16      8.   Declaration of Edith Kroha ("Kroha Decl.") and attachments;

17      9.   Declaration of Jacki Peterson ("Peterson Decl.") and attachments;

18      10.  Declaration of Dr. J. David Kenney ("Kenney Decl.") and attachments;

19      11.  Declaration of Dale Robertson ("Robertson Decl.");

20      12.  Declaration of Sheri Malakhova ("Malakhova Decl."); and

21      13.  Declaration of Michelle Hansen ("Hansen Decl.").

22

23      [1] Two of the individual defendants – Sheri Malakhova, MD, and Dale Robertson, PA-C - are separately represented in this action. They were independently contracted with the State of Washington at the time of their respective involvement with the plaintiff's request for a urology consult, which was limited to (at most) being a voting member present at one (Dr. Malakhova) or two (Mr. Robertson) meetings of the Care Review Committee at which the plaintiff's request was discussed. *See* Declaration of Sheri Malakhova, MD; Declaration of Dale Robertson, PA-C. To avoid duplicative briefing, the separately-represented defendants join in the present motion for summary judgment. To the extent warranted by plaintiff's response and the unique posture of these defendants, they reserve their right to submit separate reply briefing on the present Motion.

24

25

26

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT PURSUANT TO
RULE 56(c) - 18-cv-05387-RBL-TLF

2

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    STATEMENT OF FACTS

### A.  Summary of Parties

R.M. resided at the Washington State Penitentiary ("WSP") until he transferred to the Clallam Bay Correctional Center (CBCC) in March 2015. R.M. received medical treatment at both the WSP and the CBCC health clinics. ECF 001-2, ¶¶ 3.1, 4.2, 4.6, 4.7, 4.9, 4.12, 4.14, 4.15, 4.17, 4.21; ECF 008, ¶ 45.

Defendant State of Washington, through its Department of Corrections ("DOC"), provides health care to offenders in its correction centers. ECF 008, ¶ 6. The twenty-three individual Defendants are current and former DOC employees, medical professionals and medical contractors whom R.M. alleges participated in a January 21, 2015 Care Review Committee ("CRC") meeting, personally treated him and/or reviewed his grievance. ECF 001-2, ¶¶ 3.2 – 3.27.

### B.  Summary of Undisputed Facts Material to Summary Judgment Motion

#### 1.  R.M. Received Ongoing and Regular Care for his Peyronie's Disease at DOC Health Clinics When He Sought Such Treatment

The issue at the center of R.M.'s lawsuit is his personal struggle to come to terms with having an incurable illness called Peyronie's disease ("PD") about which little is known and for which satisfactory treatments are few and far between even today. It is evident from the allegations and the undisputed facts that from the time R.M. was first assessed with the disease in 2014, he has refused to believe he has the disease and disagreed with his prison medical providers' management of and the CRC's decisions regarding what care is appropriate for his disease.

As detailed below, in the three years from July 2014 to October 2017, whenever R.M. sought help for his PD, his prison medical providers gave him appropriate care and the CRC made timely

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT PURSUANT TO
RULE 56(c) - 18-cv-05387-RBL-TLF

3

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

and appropriate decisions regarding consulting an outside urologist. The undisputed facts show significant periods when R.M. unilaterally chose not to seek help for his disease. Under such circumstances, R.M. cannot claim any Defendant was deliberately indifferent to his medical needs.

R.M. alleges that his problems began in July 2014 when he went to the WSP health services clinic ("WSP Clinic") with complaints about his penis.  ECF 001-2, ¶ 4.2. At that visit R.M. told Physician's Assistant ("PA-C") Jo Phillips about finding hard lumps in his penis, having painful erections and seeing his penis curve off to the side. He told PA-C Phillips that he thought his condition related to his taking Hepatitis C shots or his blood pressure medicine. PA-C Phillips examined him and told him he may have a condition called Peyronie's disease. She called in Dr. Edwards who also examined and assessed R.M. as having PD. PA-C Phillips noted in R.M.'s medical record:

> **PHYSICAL EXAMINATION**: . . .
>
> <u>GENITALIA</u>:  Penis – one fibrous firm 5 mm lump on left side of penile shaft.  Left side of penis shaft has numerous fibrous firm 4 to 7 mm lumps.  I had Dr. Edwards come in and examine patient also.
>
> **ASSESSMENT**:  Peyronie's disease.
>
> **PLAN**:
>   1.  Dr. Edwards discussed with the patient that Peyronie's disease is of unknown cause.  It is the result of fibrous tissue developing.  It is very unlikely that it is related to any of the medications that he had been taking.
>
>   2.  He and I checked Uptodate.com and its recommendations is that the patient should be evaluated by Urology.  Requesting Urology consult for evaluation and diagnostics as indicated.

Phillips Decl. ¶ 6 and Attach. "A", p. 01010286-288.  PA-C Phillips submitted the urology consult request to the CRC the same day.  Phillips Decl. ¶ 6 and Attach. "B", p. 01010602.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT PURSUANT TO
RULE 56(c) - 18-cv-05387-RBL-TLF

4

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

Six days later, on August 6, 2014, the CRC reviewed the request.[2]  The individual Defendants who are listed on this CRC Report admit to participating in all or part of this teleconference. ECF 008, ¶¶ 7 – 31. A CRC member with urology experience spoke of the different treatments being tried in the industry to try to preserve sexual function and reduce pain. The Committee noted that significant curvature with erection can cause pain but this was typically pain with intercourse, not intractable (constant) pain. The committee also noted that the symptoms R.M. reported were not consistent with this. They reviewed medical literature which indicated there was "no definitive treatment or cure for this condition" and "UpToDate" which indicated that the "pain r/t to this also resolves in 2 years." The committee determined that because there was no definitive treatment or cure for PD, a urology consultation was not medically necessary and denied the request.[3] Phillips Dec. ¶ 7 and Attach. "D", p. 01010604. R.M. grieved this denial immediately.  ECF 001-2, ¶4.5.

Later that month, on August 25, 2014, R.M. met with PA-C Phillips about wanting to stop taking his blood pressure medication. During the visit, they discussed the CRC decision. R.M. alleges that in their discussion PA-C Phillips told him there was nothing she could do for him.  ECF 001-2, ¶ 4.6.  In an affidavit signed on November 12, 2014, however, R.M. was more forthright about this discussion.  Recollecting a frank discussion with PA-C Phillips, R.M. attested that she told him a urologist on the review committee said, "there was no treatment for Peyronie's Disease, that it usually was not painful, and even when it was painful the pain only lasted a couple of years." R.M.'s

---

[2] See Section IX of Offender Health Plan, attached as Edwards Decl. Attach. "A", p. 03010001 - 040, especially p. 03020011 - 115, for an overview of the Care Review Committee's purpose and procedures.

[3] "Medical Necessity" in this context is defined by WAC 137-91-010 and elaborated on by the DOC Health Services Offender Health Plan.  Generally speaking, a treatment is medically necessary if it is essential to life/preservation of limb, reduces intractable pain, prevents significant deterioration of activities of daily living, or is of proven value to significantly reduce the risk of one of the above outcomes. In contrast, care that lacks medically recognized professional documentation of efficacy is not medically necessary. *See* Edwards Decl. Attach. "A", p. 03010008-009 and WAC 137-91-010.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT PURSUANT TO
RULE 56(c) - 18-cv-05387-RBL-TLF

5

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1  response was to disagree, telling PA-C Phillips "my condition must not be Peyronie's Disease

2  because my condition is extremely painful and getting worse every day." Meyer Decl. Attach. "B",

3  p. 01010633-635; Phillips Decl. ¶ 8 and Attach. 'E", p. 01010283.

4          From August 25 until November 20, 2014, R.M. did not visit the WSP clinic. ECF 001-2, ¶¶

5  4.5, 4.6.  On November 12, 2014, Registered Nurse ("RN") Julie Mason met with R.M. to discuss

6  his grievance. R.M. told RN Mason that his condition continued to worsen but he also admitted to

7  her that he had not returned to sick call since the CRC denied his request. RN Mason advised R.M.

8  to talk with his provider and let him or her know that his symptoms are getting worse. Mason Decl.

9  ¶ 5 and Attachs. "A", p. 01040005 and "B", p. 01010282. The next day, R.M. met with PA-C Jen

10  Ambrose, telling her that he was there to serve the clinic with an affidavit he wrote. PA-C Ambrose

11  noted on her report that R.M. reported no changes to his symptoms, no increase urination or

12  frequency, negative painful urination, negative hematuria, no fever, no chills or night sweats. At that

13  visit, PA-C Ambrose scheduled R.M. to see Dr. Edwards for a further evaluation of his condition.

14  ECF 001-2, ¶ 4.7; Meyer Decl. ¶ 6 and Attach. "A", p. 01010281 and "B", p. 01010633-635.

15          On November 20, 2014, R.M. had his second visit with Dr. Edwards. Dr. Edwards noted in

16  his medical report that R.M. said his penis hurts and there is some curvature when he gets erections

17  "but basically there is not a deformity of significance." Dr. Edwards further noted the problem was

18  more that R.M. said the lumps bother him and were painful with erection, had shortened his penis,

19  and he is not able to masturbate. Dr. Edwards examined R.M. and wrote in R.M.'s medical record:

20          PHYSICAL EXAMINATION:  . . .

21          PENIS:  Exam looks very much the same as the exam documented on 07/31/14.
                He has several fibrous nodules, some up to about 1 cm in diameter, and
                they are quite firm and consistent with Peyronie's Disease.  I did not see
                any deformity of the penis at this time, although of course it was not erect.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT PURSUANT TO
RULE 56(c) - 18-cv-05387-RBL-TLF                6                ATTORNEY GENERAL OF WASHINGTON
                                                                Torts Division
                                                                7141 Cleanwater Drive SW
                                                                PO Box 40126
                                                                Olympia, WA 98504-0126
                                                                (360) 586-6300

1

2
      ASSESSMENT: Peyronie's Disease.

3
      PLAN:
      1.   I discussed the situation at some length with him. I reviewed Up-To-Date

4
           again with him a bit, and it does suggest one could try certain medications.
           The first one listed is Trental. We talked about that and he would like to try

5
           that, so I will order Trental 400 mg p.o. b.i.d. x 180 days.
      2.  I will check him again in six weeks.

6
      . . .

7
On that day, Dr. Edwards wrote out a six-month prescription for Trental that R.M. took until May

8
18, 2015. ECF 001-2, ¶ 4.7; Edwards' Decl. ¶ 10 and Attachs. "B", "C" and "D", pp. 01010278-280.

9
      At the six-week follow-up on January 8, 2015, Dr. Edwards reported the following in

10

11
R.M.'s medical record:
      . . .

12

13
      S:   Followup on Peyronie's disease. he thinks the Trental is helping to slow the
             progression of this a little bit, but he is very troubled with severe pain with

14
             nocturnal erections, he says. He is very upset that the DOC has not allowed
             him to see a urologist.

15

16
      O:   He is alert and oriented. BP 124/84. The exam today shows the same
             multiple, firm plaques of scar tissue of the penial shaft, characteristic of

17
             Peyronie's disease. I can't detect any progression on the exam.

18
      A:   Peyronie's disease with severe pain associated with nocturnal erections.

19
      P:   1. I discussed this at length with him. I could not suggest anything other than
             taking this back to the CRC, which I agreed to do.

20
          2.   Recheck in two months.

21
Edward Decl. ¶ 11 and Attachs. "E" and "F", p. 01010276-277.

22
      Thirteen days later, on January 21, 2015, Dr. Edwards presented and the CRC reviewed

23

24
R.M.'s second request for a urologist referral. Finding no change in R.M.'s condition since his first

25
request, the CRC denied his request as not medically necessary. ECF 001-2, ¶ 4.9; Edwards Decl. ¶

26

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT PURSUANT TO
RULE 56(c) - 18-cv-05387-RBL-TLF

7

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

13 and Attachs. "G", p. 01010597 and "H"; p. 01010600.  The individual Defendants who are listed on the CRC Report admit to participating in all or part of this teleconference.  ECF 008, ¶¶ 7 – 31.

In the meantime, R.M's grievance reached DOC Assistant Secretary Bovenkamp who found the matter adequately investigated, found no evidence that R.M. had been denied treatment that was medically necessary and denied R.M.'s appeal on February 12, 2015. Bovenkamp Decl. ¶ 1 and Attach. "A", p. 01040023.

### 2. By His Own Choice, R.M. Stopped Seeking Treatment for his PD from March 25, 2015 Through January 3, 2017

R.M. transferred from WSP to CBCC on March 25, 2015. After his arrival, R.M. did not mention or seek treatment for his PD even though he continued to receive regular care at the CBCC's medical clinic. R.M. saw Registered Nurse ("RN") Wei Weller for checkups and for his hypertension regularly every six months from September 2, 2015, through December 24, 2016. R.M. did not mention his PD to her at any of these visits. Weller Decl. ¶ 5 and Attachs. "A", p. 01010266, "B", p. 01010264, "C", p. 01010260,  and "D", p. 01010259.  .

During the entire period from March 25, 2015, to January 3, 2017, R.M. saw prison health providers numerous times, but as R.M. admits in his Amended Complaint and as the records show, he sought no medical treatment for the lumps or "severe" pain in his penis during this time. ECF 001-2, ¶¶ 4.12.

### 3. R.M. Tells ARNP Kroha About His Symptoms at a January 2017 Visit to the Clinic But Stridently Denies He has PD

R.M. ended his self-imposed suspension from seeking treatment for his PD on January 3, 2017, when he met with ARNP Kroha to discuss his fatigue. R.M. alleges that at that visit, he told her about his "painful and debilitating condition", saying it was getting worse. R.M. also alleges

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT PURSUANT TO
RULE 56(c) - 18-cv-05387-RBL-TLF

8

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

ARNP Kroha informed him "his case would be discussed with a urologist or he would get an appointment." ECF 001-2, ¶4.14.

ARNP Kroha's Primary Encounter Report elaborates on this visit. ARNP Kroha writes that R.M. told her that he experienced fatigue for over three years since completing his Hep C treatment and although he sleeps eight hours a day he was not completely rested. R.M., she noted, was most concerned that since his Hep C treatment his penis had shrunk by 50% in length and width and that he had painful erections and moving nodules. She also noted that R.M. told her multiple doctors and mid-levels advised him that he has Peyronie's disease "but he does not believe it" and he was strident in his beliefs. ARNP Kroha examined R.M. and found a palpable ribbon of fibrous firm tissue along the shaft, no lesions, no sores. ARNP Kroha assessed the condition as "Peyronie's disease altho patient steadfastly denies this." Kroha Decl. ¶ 5 and Attach. "A", p. 01010258.

After January 3, 2017, R.M. did not visit the clinic until June 13, 2017. On May 21, 2017, however, he sent the CBCC clinic a "kite", asking for a status on seeing a urologist. ECF 001-2, ¶ 4.15. The next day, PA-C Peterson responded saying the CRC had denied his request to see a urologist in January 2015 and there was no note in his chart stating any plans to see a urologist. PA-C Peterson added that R.M. has been diagnosed with Peyronie's and told him to sign up for sick call to discuss this. Peterson Decl. ¶ 6 and Attach. "B", p. 010101650.

On June 13, 2017, R.M. had his second visit with ARNP Kroha. R.M. alleges that at this visit, ARNP Kroha "confirmed the condition had gotten worse and stated the case would be discussed with a urologist." ECF 001-2, ¶ 4.15.  Again, ARNP Kroha's encounter report provides more details of this visit. ARNP Kroha reported that R.M. was insistent that his penis had shrunk by half due to his Hepatitis treatment, that he had painful erections and that there was an increase of

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT PURSUANT TO
RULE 56(c) - 18-cv-05387-RBL-TLF

9

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

fibrous tissue in his penial shaft. She wrote that R.M. was adamant in his assertions. She noted that

he has been evaluated and advised by multiple practitioners that he has Peyronie's disease, "which

he does 'not believe'. She also noted that they discussed the fact that his request to see a urologist

had been presented to the CRC in 2015 and denied. ARNP Kroha further wrote that R.M. said fibrous

"beads" appeared along the dorsum of his penile shaft one year after his Hepatitis C treatment in

2013.  ARNP Kroha re-examined R.M. and found no sores, rashes or lesions, his penis was 3 ¼

inches from the base of the shaft to the tip, there was a row of three nodules along the shaft, negative

for masses, negative for ongoing LAD or hernia. ARNP Kroha noted, "Patient expressed frustration

as he does not believe the diagnosis . . . Patient denies interference with urinary stream or function."

ARNP Kroha said the findings are "unchanged in 3 years." The plan was to continue observation.

Kroha Decl. ¶ 6 and Attach. "B", pp. 01010256-257.

### 4. R.M. Files a Second Grievance Claiming He Was Being Denied Adequate Medical Care for His Disease

The next day R.M. filed another grievance asserting that he was being denied adequate

medical care for his "painful and debilitating" condition, claiming, "I have had family members

research Peyronie's disease on the internet and it does not describe my condition." Holthe Decl.

¶ 3 and Attach "A", pp. 01050002-003.

On July 19, 2017, as part of the investigation of R.M.'s second grievance, DOC Dr. J. David

Kenney examined R.M.  R.M. alleges that Dr. Kenney "noticed that the 'deformatory [sic] was more

noticeable' and the pain issue had not been resolved."  ECF 001-2, ¶ 4.17. In his grievance

investigation report, Dr. Kenney actually wrote,

"I met with this patient to discuss his medical concerns.  The past record was reviewed with him and an examination performed.  The patient stated that his perception is the condition continues to change (that is, the pain is not resolved and

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56(c) - 18-cv-05387-RBL-TLF

10

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1    the deformity is more noticeable) Mr. M███ agreed with the decision to present
2    his issue to CRC on the basis of a worsening condition."

3  Kenney Decl. ¶ 7, and Attach. "B", p. 0105006. Dr. Kenney's encounter report of this same

4  examination was more specific. Dr. Kenney reported:

5        Follow up urology/CRC
         Consult (signature) WINDLE RN
6        Hep C 'few years ago' Lump on side of penis.  Painful   Nocturnal eruptions.
         Moved around  ? Pyronie's Ds.  ~~Lately~~  Thinks tissue in penis died.  Now painful,
7        nocturnal erections. Has scar tissue. Red.  Diameter "like nothing" length
         Specifically since last CRC Level III determination ⸺ ~~patient~~ Jan/15.  Wakes up
8        with painful erections  last 2 nights ago. "I woke up and it bends, contorts, & twists'
         and 'hurts' all the time.  No urinary symptoms.  No testicular pain/complaints
9        Concerns:  1) shrinking size 2) lump 3) painful erections ofy O/E (chaperoned)
         No asymmetry of penis/gonads (circled L)(down arrow) with patient directed
10       palpation (right facing arrow)  no discrete 'lump'.  (circled N) carcenosa somewhat
11       prominent dorsal veins  Meatus WNL. Urethra (circled N) to palpation.

12       Assess: 1.  Hx  migratory penis lumps which have according to patient coalesced
13                   on the dorsal surface penis
              2.    Reported painful erections lasting minutes accompanied by penis
14                  bending, contorting & twisting
              3.  Reported ~~pe~~ loss of penile mass.
15       Mgmt:  1. Discussed with PA Kroha who examined the patient and will present to
16                  CRC for urology eval.
              2. Extensive discussion regarding normal penile anatomy with 2 diagrams.
17                 Pt appears to understand basic anatomy.
              3. Pt. expresses concern that he would like urology evaluation.  Discussed
18                 CRC presentation of subjective and objective data.
              4. PTC pm (delta sign) condition, worsening condition or new S/S
19

20 Kenney Decl. ¶ 7 and Attach "A", p. 01010254-255.

21 ARNP Kroha submitted R.M.'s request to the CRC on August 2, 2017, and presented it to the

22 committee on August 16, 2017. Committee members also heard from Dr. Kenney who said that he

23 "cannot see anything that is not normal anatomy for the area." Dr. Kenney expressed concern

24 because R.M. is a lifer, and is so overly concerned about this that it "might be some merit for him to

25 see urologist who will probably find it also normal. Occurs at least 3x/week. "Pt wants physical exam
26

DEFENDANTS' MOTION FOR                            11                    ATTORNEY GENERAL OF WASHINGTON
SUMMARY JUDGMENT PURSUANT TO                                                      Torts Division
RULE 56(c) - 18-cv-05387-RBL-TLF                                              7141 Cleanwater Drive SW
                                                                                    PO Box 40126
                                                                              Olympia, WA 98504-0126
                                                                                    (360) 586-6300

done by a specialist. He has a very fixed idea that something is terribly wrong. . . ." The CRC approved the request. ECF 001-2, ¶ 4.19; Kroha Decl. ¶ 7 and Attachs. "C", p. 01010596 and "D", p. 01010594; Kenney Decl. ¶ 8.

On October 6, 2017, R.M. saw urologist Dr. Russell in Port Angeles, Washington. Dr. Russell was unsure of what caused R.M.'s condition but diagnosed it as "probably Peyronie's disease". R.M. alleges Dr. Russell said, "the damage would be permanent", "a prosthetic would be necessary to replace the damages/missing tissue and prevent further loss of length" and "had the Department been providing treatment back in 2014 and 2015, it could have prevented the severity of the deformity." ECF 001-2, ¶ 4.20.

Dr. Russell's Encounter report speaks for itself. Kroha Decl. ¶ 8 and Attachs. "E", p. 01010583, "F", p. 01010585-589 and "G", p. 01010584. In the assessment portion of his report, Dr. Russell said,

> "Probable Peyronie's disease fluctuating in location and spared he is over 3 years without either stabilization or resolution. I talked to him at length about the nature of the disease and treatment options which generally have been disappointing. Topical verapamil is the least invasive and most conservative approach but cures are not that common. Intracorporeal verapamil and more recently Xiaflex have been used with some success. However that approach requires a discrete lesion to inject and on exam he does not have that finding. Sometimes a penile implant is the best solutions to both maintain quality of erections and prevent further loss of length. That is certainly the most aggressive, radical approach and I don't know whether under the current circumstances he would even be considered for such treatment."

Dr. Russell stated his plan as,

> "I will send back to the medical center at the prison a prescription for 15% topical verapamil. If that is covered under the prison health plan he could try daily applications for up to 3 months to see if there is any improvement. I don't believe he

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT PURSUANT TO
RULE 56(c) - 18-cv-05387-RBL-TLF

12

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

is a candidate for intracoporeal injections based on current findings.  I am not sure whether, as a prisoner, he would be considered for a penile implant." [4]

### C. Parties Agree R.M. Exhausted his Administrative Remedies

Defendants do not dispute that R.M. exhausted his administrative remedies. Bovenkamp Decl. ¶ 6.

## I.    ISSUES PRESENTED

1.  Are Defendants entitled to summary judgment in their favor where: (1) R.M. simply disagrees with Defendants regarding their assessment of his condition and the appropriate medical treatment for his disease; (2) R.M. fails to allege any specific injury suffered from or linked to conduct by any individual Defendant; and (3) R.M. cannot demonstrate that any individual Defendant engaged in a medically unacceptable course of treatment?

2.  Does R.M. fail to state a claim under §1983 against the State where state governments or their employees acting in official capacities are not "persons?"

3.  Are the individual Defendants entitled to qualified immunity because R.M. cannot show that any Defendant violated a clearly established constitutional or statutory right?

4.   Are the Defendants entitled to summary judgment on R.M.'s medical negligence claim when he cannot, as a matter of law, provide expert testimony or evidence sufficient to demonstrate that any of them fell below the standard care with respect to any medical care and treatment provided to him or should the state claim be dismissed for lack of pendent jurisdiction if the Court dismisses the federal law based claims?

---

[4] The DOC Offender Health Plan, Section XVI, Levels of Care Directory states that "Evaluation or treatment of erectile dysfunction including medical or surgical treatment, implanted prostheses, external erectile aids" and "Experimental therapies or tests: any care which is currently under investigation or has unproven value" are care which is expressly not medically necessary and which is not authorized to be provided.  See Edwards Decl. Attach. "A", p 03010026.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT PURSUANT TO
RULE 56(c) - 18-cv-05387-RBL-TLF

13

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

## II.    STANDARD OF REVIEW

### A.  RULE 56(C) SUMMARY JUDGMENT IS APPROPRIATE THERE ARE NOT GENUINE ISSUES OF MATERIAL FACT IN R.M.'S CLAIMS

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the non-movant's claim. *Celotex Corp. Catrett,* 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex,* 477 U.S. at 323-24. As Defendants will show below, there is no evidence that supports an element essential to R.M.'s claims and Defendants are entitled to summary judgment as a matter of law.

## III.    ARGUMENT

### A.  R.M. CANNOT PROVE AN EIGHTH AMENDMENT VIOLATION BECAUSE HE CANNOT SHOW SERIOUS HARM CAUSED BY DELIBERATE INDIFFERENCE

The Eighth Amendment protects inmates from cruel and unusual punishment, which includes the denial of medical care. *Estelle v. Gamble,* 429 U.S. 97, 104-06 (1976). A violation of the Eighth Amendment occurs when prison officials are deliberately indifferent to a prisoner's medical needs. *Toguchi v. Chung*, 391 F.3d. 1051, 1057 (9th Cir. 2004);

To prevail in an Eighth Amendment based §1983 claim, the plaintiff must demonstrate that the defendants' actions were both an actual and proximate cause of his injuries. *Leer v. Murphy,* 844 F.2d 628, 632-33 (9th Cir. 1988). The plaintiff must "objectively show that he was deprived of

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT PURSUANT TO
RULE 56(c) - 18-cv-05387-RBL-TLF

14

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

something "sufficiently serious" or "harmful". W*ood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir. 1992)(*overruled on other grounds*).

Deliberate indifference is a high legal standard. *Toguchi,* 391 F.3d at 1060. Liability may follow only if a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994); *Labatad v. Corr. Corp. of Am.,* 714 F.3d 1155, 1160 (9th Cir. 2013). Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights. *Estelle,* 429 U.S. at 105-06; *Toguchi,* 391 F.3d at 1057. For the reasons stated below, this Court should hold that R.M. cannot meet the legal standard of deliberate indifference as a matter of law.

### 1. R.M.'s Disagreement with Defendants' Decision to Order or Not to Order Additional Treatment for R.M. Does Not Give Rise to a §1983 Claim

The propriety of additional treatment is a "classic example of a matter for medical judgment" and a decision to order or not to order additional treatments does not represent cruel and unusual punishment. *Estelle,* 429 U.S. at 107. It is only the "unnecessary and wanton infliction of pain . . . [which] constitutes cruel and unusual punishment forbidden by the eighth Amendment." *Whitely v. Albers*, 475 U.S. 312, 319 (1986).

The basis of R.M.'s suit is his disagreement with Defendants about if and when it was appropriate to seek a urology referral. A difference of opinion between the physician and the prisoner concerning the proper course of treatment for a medical condition does not amount to deliberate indifference to serious medical needs and does not give rise to a §1983 claim. *Toguchi*, 391 F.3d at

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT PURSUANT TO
RULE 56(c) - 18-cv-05387-RBL-TLF

15

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1058; *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996), *cert. denied*, 519 U.S. 1029 (1996); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Moreover, prison officials may be free from liability if they "responded reasonably" to a known risk; a dispute, in hindsight, over the existence of arguable superior alternatives does not raise a triable issue of fact as to whether the defendants were deliberately indifferent. *Farmer,* 511 U.S. at 844. R.M. simply asserts that Defendants should have sent him to see a specialist earlier than they did.  R.M. does not allege nor are there any facts in the record of any proven superior alternative because there is no known effective treatment or cure for this disease. Based on the record, the Court should hold as a matter of law the CRC's decision to approve or not approve a urology consultation does not and cannot establish an Eighth Amendment violation claim. The Court should also hold as a matter of law that R.M.'s difference of opinion with his prison medical providers and the CRC about what or when treatment should have occurred does not give rise to a §1983 claim.

### 2.   CRC's Delay in Referring R.M. To an Outside Urologist Is Not Sufficient to "Shock the Conscience", a Requirement to Show an Eighth Amendment Violation

The Ninth Circuit court has held that a delay in referral to an outside specialist for specialty treatment not available from the prison medical staff is "not . . . so shocking to the conscience as to require a finding that appellant [DOC] has been subjected to cruel and unusual punishment." *Mayfield v. Craven,* 433 F.2d 873, 874 (9th Cir. 1970). Here, the court can find, as a matter of law, that there was no delay in R.M. getting appropriate treatment. Dr. Edward's assessment of PD in July 2014 and his prescribed course of treatment with medication in November 2014 which improved R.M.'s condition, are similar to what urologist Dr. Russell found and recommended in 2017. Moreover, as detailed in Section I.B.2 above, for almost twenty-one months between March 25, 2015, until January 3, 2017, R.M. delayed his own treatment by denying he had PD and choosing

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT PURSUANT TO
RULE 56(c) - 18-cv-05387-RBL-TLF

16

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

not to seek treatment for his PD. On these bases, the court should hold, as a matter of law, that nothing in the undisputed facts indicate a delay in Defendants' assessment and treatment of R.M.'s Peyronie's disease, let alone a delay so "shocking to the conscience" as to establish an Eighth Amendment violation.

### B. R.M. FAILS TO STATE A VALID §1983 CLAIM AGAINST ANY INDIVIDUAL DEFENDANT

#### 1. R.M. Fails to Show Any Specific Facts Demonstrating a Constitutional or Statutory Deprivation Injury Suffered or Linked to Conduct By Any Individual Defendant

To state a §1983 claim against individual Defendants, a plaintiff must allege facts showing (1) the conduct about which he complaints was committed by a person acting under the color of state law; and (2) the conduct deprived him of a federal constitutional or statutory law. *West v. Atkins,* 487 U.S. 42, 48 (1988). [A] plaintiff must plead that each Government official defendant, through the official's own individual actions, violated the Constitution. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Alleging merely that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *See Rode v. Dellarciprete,* 845 F.2d 1195, 1208 (3rd Cir. 1988). The allegations must be made with appropriate particularity, in that a complaint must allege the particulars of conduct, time, place and person responsible.  *See Evancho v. Fisher*, 423 F.3d 347, 354 (3rd Cir. 2005). There are no facts in the record that affirmatively link his alleged injuries to specific conduct by any Defendant. This is because there is no link. R.M.'s alleged injuries are the incurable conditions and natural progression of his disease.

#### 2. R.M. Fails to Demonstrate Facts Showing That Any Individual Defendant Engaged in a Medically Unacceptable Course of Treatment

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56(c) - 18-cv-05387-RBL-TLF

17

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

To prevail in his §1983 action against any of the individual Defendants, R.M. must "show that the course of treatment the doctors chose was medically unacceptable under the circumstances. . . and the plaintiff must show that they chose this course in conscious disregard of an excessive risk to plaintiff's health." *Jackson,* 90 F.3d at 332. Specifically, R.M. must prove that each individual Defendant was deliberately indifferent to his serious medical needs. *Farmer,* 511 U.S. at 833; *Estelle*, 429 U.S. at 103-105. Inadequate treatment due to malpractice or even gross negligence does not amount to a constitutional violation. *Wood,* 900 F.2d at 1334.

The Court should hold, as a matter of law, that R.M. cannot meet this "deliberate indifference" standard. There is no genuine issue of material fact that Defendant Dr. Edwards correctly assessed R.M. as having PD from the onset on July 31, 2014 and provided treatment on November 20, 2014 that improved R.M.'s condition. In fact, as R.M. admitted to ARNP Kroha in January 2017, multiple prison doctors and mid-level medical providers told R.M. numerous times that he had PD. R.M. didn't believe what he heard from his prison doctors and chose to ignore his disease. R.M. cannot demonstrate that any action taken by any individual Defendant was a medically unacceptable course of treatment under these circumstances. Because R.M. cannot establish one or more of the elements of a §1983 claim, Defendants are entitled to Summary Judgment.

## C. THE STATE IS NOT LIABLE UNDER §1983 BECAUSE, AS A MATTER OF LAW, THE STATE IS NOT A "PERSON"

Courts have consistently held that state governments are not a "person" under 42 U.S.C. §1983. "[N]either a State nor its officials acting in their official capacities are "persons" under §1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). On this ground, the court should dismiss R.M.'s claims for damages against Defendant State of Washington.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT PURSUANT TO
RULE 56(c) - 18-cv-05387-RBL-TLF

18

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

## D. THE WELL ESTABLISHED LAW OF QUALIFIED IMMUNITY PROTECTS ALL INDIVIDUAL DEFENDANTS FROM R.M.'s LAWSUIT

Under the doctrine of qualified immunity, corrections officials are shielded from liability for civil damages unless they violate clearly established law of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity standard is a generous one. It "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v Bryant*, 502 U.S. 224, 229 (1991). Because day-to-day decisions of prison officials are accorded deference by the courts under the principles espoused by *Bell v. Wolfish*, 441 U.S. 520, 531 (1979), these officials are entitled to a corresponding accommodation if a reasonable error in judgment is made. "This accommodation . . . exists because 'officials should not err always on the side of caution' because they fear being sued." *Hunter*, 502 U.S. at 228; See *Estate of Ford v. Ramirez-Palmer,* 301 F.3d 1043, 1049-50 (9th Cir. 2002).

The issue of qualified immunity is a question of law for the court. *See Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993). Applying the standard is a two-part process. The first question is whether the law governing the official's conduct was clearly established. If the relevant law was not clearly established, the official is entitled to immunity from suit. *Wood v. Moss*, 572 U.S. 744, 134 S. Ct. 2056, 2066-67 (2014)(quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *Somers v. Thurman*, 109 F.3d 614, 617 (9th Cir. 1997), *cert. denied*, 522 U.S. 852 (1997). If the law was clearly established, the dispositive inquiry is whether it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Saucier v. Katz,* 533 U.S. 194, 202 (2001), *overruled in part* by *Pearson v. Callahan,* 555 U.S. 223 (2009). If

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT PURSUANT TO
RULE 56(c) - 18-cv-05387-RBL-TLF

19

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1  either prong is satisfied, then the official is entitled to qualified immunity. As will be shown

2  below, each individual Defendant has qualified immunity from R.M.'s lawsuit.[5]

3  **1. Defendant CRC Members Have Qualified Immunity Because R.M. Cannot Demonstrate Their Conduct Caused R.M. Any Specific Injury**

4

5  R.M.'s only allegation against most of the individual Defendants is that he or she participated

6  in a January 21, 2015, CRC meeting that denied R.M.'s second request to see a urologist. ECF. 001-

7  2, ¶ 4.11. The individual members of the CRC are subject to qualified immunity because, as

8  discussed above: (1) plaintiff cannot show that any individual members of the CRC violated a clearly

9  established law about which they were aware; and (2) plaintiff cannot show that it would have

10  been clear to any of the individual committee members that any of their conduct was unlawful

11  under the circumstances.

12

13  In addition, there can be no liability under 42 U.S.C. §1983 unless the plaintiff establishes

14  some affirmative link or connection between an individual defendant's action and the claimed

15  deprivation. *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976); *See Leer*, 844 F.2d at 633. Vague and

16  conclusory allegations of official participation in civil rights violations is not sufficient. *Ivey v. Bd.*

17  *of Regents of Univ. Alaska,* 673 F.2d 266, 268 (9th Cir. 1982). Here, the undisputed records show

18  the CRC twice considered R.M.'s request to see a urologist within six months of his being first

19  assessed with PD. The committee initially determined in August 2014 that because there was no

20  treatment or cure for the disease a referral was medically not necessary and subsequently found in

21  January 2015 that there was no change in R.M.'s condition requiring a change of their initial

22  determination. On these facts, the Court should hold, as a matter of law, that nothing in CRC's

23

24

25  ---

[5] Qualified immunity shields from liability individuals contracted to operative on the government's behalf, such as Dr. Malakhova and Mr. Robertson, just as it does government employees. *See Filarsky v. Delia,* 566 U.S. 377 (2012).

26

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT PURSUANT TO
RULE 56(c) - 18-cv-05387-RBL-TLF

20

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

conduct deprived R.M. of any constitutional right and, consequently, the Defendants individually have qualified immunity.

### 2. Defendants Bovenkamp and Braid Have Qualified Immunity Because the Allegations Show They Were Performing Their Routine Administrative Duties

R.M.'s only substantive allegations against Defendants Bovenkamp and Baird are that they received his appeal on January 16, 2015, reviewed it and found the CRC's August 6, 2014, determination supported and, on that basis, denied R.M.'s grievance. ECF 001-2, ¶ 4.10. There are no material facts showing that their review was anything other than routine. A prison official's denial of a grievance does not itself violate the constitution. *Evans v. Skolnik,* 637 Fed. Appx. 285, 288 (9th Cir. 2015), *cert. dismissed*, 136 S. Ct. 2390 (2016). A clearly established constitutional right must be particularized to the facts of the case. *White v. Pauly*, 137 S. Ct. 548, 552 (2017). There are no facts that suggest these Defendants' administrative acts violated a clearly established statutory or constitutional right. On these grounds, this Court should find Defendants Bovenkamp and Braid have a qualified immunity from R.M.'s suit.

### 3. Defendants Edwards, Kenney and Kroha Have Qualified Immunity Because R.M. Cannot Show They Were Deliberately Indifferent to His Medical Needs

R.M. alleges that three Defendants, Dr. Edwards, ARNP Kroha and Dr. Kenney personally treated him, in addition to participating in the January 21, 2015, CRC meeting. R.M. does not identify nor allege any affirmative link between any specific injuries he suffered and specific conduct by any of these three Defendants. ECF. 001-2, ¶¶ 3.8, 3.11, 3.13, 4.11.

The only allegation R.M. makes against Dr. Edwards is that he met with Dr. Edwards in June 2015. ECF. 001-2, ¶ 4.12. R.M. alleges ARNP Kroha told him on January 3, 2017, that his condition had gotten worse and the case would be discussed with a urologist. ECF. 001-2, ¶ 4.15. R.M. admits

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT PURSUANT TO
RULE 56(c) - 18-cv-05387-RBL-TLF

21

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1  he did not seek further medical help from CBCC thereafter until May 21, 2017 when he sent a kite

2  asking about the status of his referral to a urologist. R.M. also admits that when this matter came to

3  light, ARNP Kroha engaged Dr. Kenney in R.M.'s situation and thereafter she submitted and secured

4  CRC approval for him to see a urologist. ECF. 001-2, ¶¶ 4.17; 4.19. As to Dr. Kenny, R.M.'s admits

5  Dr. Kenney examined him on July 19, 2017. The record shows Dr. Kenney examined R.M. as part

6  of a routine, administrative grievance investigation and after examining R.M., supported ARNP

7  Kroha's request to the CRC. ECF. 001-2, ¶ ¶ 4.16, 4.17. Kroha Decl. Attach. "D", p. 01010594.

8       There is nothing in the record connecting specific acts of any individual Defendant to any

9  alleged injury. There are no facts showing that any individual Defendant violated a clearly

10  established statutory or constitutional right held by R.M. On these grounds, the Court should hold as

11  a matter of law that all of the individual Defendants have qualified immunity from R.M.'s suit.

### E.  R.M.'s MEDICAL NEGLIGENCE CLAIM FAILS BECAUSE HE CANNOT SHOW INJURY FROM DEFENDANTS' FAILURE TO MEET STANDARD OF CARE

        Under Washington law, to sustain a claim for medical negligence, a plaintiff must show that

his injury resulted from the failure of a health care provider to follow the accepted standard of care.

*Miller v. Jacoby*, 145 Wash. 2d 65, 72, 33 P.3d 68 (2001); *Harris v. Robert C. Groth, M.D., Inc.,*

*P.S.*, 99 Wn.2d 438, 663 P.2d 113 (1983); RCW 7.70.040(1)(2). This means a plaintiff must prove

that the defendant health care provider failed to exercise the degree of care, skill and learning

expected of a prudent health provider acting in the same or similar circumstances and that such

failure was the proximate cause of the alleged injury. *Id.* A plaintiff must likewise prove that the

alleged negligence proximately caused the damages claimed. RCW 7.70.040(2).[6]

---

[6] These elements must be proved with expert testimony. *See Harris,* 99 Wash. 2d at 449.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56(c) - 18-cv-05387-RBL-TLF

22

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

With respect to the individual members of the CRC committee (who did not provide relevant medical care to R.M.), plaintiff cannot establish any breach of standard of care and is, therefore, unable to make a showing of medical malpractice as a matter of law. *See* RCW 7.70.030(1). Neither is plaintiff able to proffer the requisite expert testimony demonstrating, on a more probable than not basis, that any act of any committee member proximately caused any of his claimed damages.

The State of Washington, as a matter of law, cannot be held liable for medical negligence because it is not a health care provider within the meaning of RCW 7.70.020(1) and, on this basis, the Court should dismiss R.M.'s state claim against the Defendant State of Washington.[7]

Finally, plaintiff is also unable, as a matter of law, to carry forward any claim against those individual defendants who did provide care to R.M. Indeed, his treating providers at the WSP Clinic correctly assessed his condition as probable Peyronie's disease in 2014, gave him ample information about his disease and timely prescribed medication to alleviate his symptoms to the extent possible under the circumstances. ECF 001-2, ¶¶ 4.4, 4.6, 4.7, 4.9, 4.12. R.M.'s choice not seek treatment for his PD does not equate to his health providers committing negligence. ECF 001-2, ¶¶ 4.12. Most importantly for this claim, when R.M. saw independent urologist Dr. Russell in October 2017, this doctor reached the same assessment of PD as Dr. Edwards did three years before. ECF 001-2, ¶¶ 4.14, 4.15, 4.17, 4.19, 4.20, 4.21. The Court should hold, based on these undisputed facts, that R.M. cannot establish medical negligence on the part of any individual Defendant.

**F.   IF THE COURT DISMISSES R.M.'s FEDERAL QUESTION CLAIM, THE COURT MUST ALSO DISMISS R.M.'s STATE CLAIM DUE TO LACK OF SUBJECT MATTER JURISDICTION**

---

[7] A health care provider is defined as a 'person licensed by the state to provide health care or related services, including but not limited to . . . a physician . . . nurse . . . [or] nurse practitioner[.]  RCW 7.70.020(1).

23

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

If the Court finds the Defendants are all entitled to qualified immunity, it must dismiss R.M.'s entire suit because of the absence of a federal question. Should the court choose not to address R.M.'s state claim and finds qualified immunity exists, this Court lacks subject matter jurisdiction over R.M.'s State claim as that claim is predicated on the same facts. If the court dismisses R.M.'s federal claim before trial without reaching the medical negligence claim, the court should also dismiss R.M.'s pendent state claim. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 509 (9th Cir. 1989).

## IV.    CONCLUSION

For all of the reasons stated above, the Defendants request that the Court hold, as a matter of law, that there is no genuine issue of material fact in this case and that the undisputed facts establish that Defendants are entitled to summary judgment as a matter of law. On these grounds, Defendant request that the Court dismiss R.M.'s 42 U.S.C. §1983 claim and his pendent State medical negligence claim with prejudice.

DATED this 16th day of November, 2018

ROBERT W. FERGUSON
Attorney General


s/ Michelle Hitomi Hansen
MICHELLE HITOMI HANSEN, WSBA No. 14051
Assistant Attorney General
PO Box 40126
Olympia, Washington  98504-0126
Tel: (360) 586-6300
E-mail: michelleh3@atg.wa.gov
Attorneys for Defendants

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT PURSUANT TO
RULE 56(c) - 18-cv-05387-RBL-TLF

24

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1
2
3

**CERTIFICATE OF SERVICE**

4

     I hereby certify that on this 16th day of November, 2018, I caused to be electronically

5

filed the foregoing document with the Clerk of the Court using the CM/ECF system and caused

to be served a copy of this document on all parties or their counsel of record on the date below

6

as follows:

7

     Attorneys for Plaintiff:

     Attorney for Defendant
Dale Robertson, PA-C:

8

Michael Kahrs, Esq.

9

Kahrs Law Firms, P.S.
2208 NW Market St., Suite 414

Rhianna M. Fronapfel
Bennett Bigelow & Leedom, P.S.
601 Union Street, Ste 1500

Seattle,  WA  98107

10

mike@kahrslaw firm.com

Seattle, WA  98101-1363
rfronapfel@bbllaw.com

11

Dan N. Fiorito III

12

Law Office of Dan N. Fiorito III
844 NW 48th Street

Attorneys for Defendant
Sheri Malakhova, MD:

Seattle, WA  98107

13

dan@danfiorito.com

Ketia B. Wick

14

Brian P. Waters
Johnson Graffe Keay Moniz &
Wick, LLP

15

925 4th Avenue, Ste. 2300
Seattle, WA  98104

16

ketia@jgkmw.com
watersb@jgkmw.com

17
18

     DATED this 16th day of November, 2018.

19
20

                    ROBERT W. FERGUSON
                    Attorney General

21

                    s/Michelle Hitomi Hansen

22

                    MICHELLE HITOMI HANSEN, WSBA No. 14051
                    Assistant Attorney General

23

                    Attorney for Defendants State of Washington,  Allbert,
                    Berglin, Bovenkamp, Braid, Lopez de Castilla, Edwards,

24

                    Fetroe, Hammond, Kenney, Keppler, Kroha, Larsen,
                    Lauren, Longano, Moore, Neisner, Newlon, Palmer, Remy,

25

                    Reyes, Smith, Sawyer and Stanbury

26

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT PURSUANT TO
RULE 56(c) - 18-cv-05387-RBL-TLF

25

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300