1
2
3
4
5

The Honorable Ronald B. Leighton
Magistrate Judge Theresa L. Fricke

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

| | |
|---|---|
| R.M., Individually,<br><br>                    Plaintiff,<br><br>          v.<br><br>STATE OF WASHINGTON, SHERYL ALLBERT, ALLISON BERGLIN, KEVIN BOVENKAMP, B. BRAID, DIEGO LOPEZ de CASTILLA, JAMES J. EDWARDS, DALE FETROE, G. STEVEN HAMMOND, J. DAVID KENNEY, MARY KEPPLER, EDITH KROHA, ERIC LARSEN, KENNETH LAUREN, FRANK LONGANO, SHERI MALAKHOVA, KEN E. MOORE, SHIRLEE M. NEISNER, MARTHA NEWLON, JOAN PALMER, KELLY REMY, JON REYES, DALE ROBERTSON, F. JOHN SMITH, KENNETH SAWYER, BO STANBURY, and DOES 1-10,<br><br>                    Defendants. | NO. 18-cv-05387-RBL-TLF<br><br>DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING PLAINTIFF'S SECOND AMENDED COMPLAINT<br><br>**Noted for: March 22, 2019** |

## I.    INTRODUCTION

The new allegations in R.M.'s Second Amended Complaint do nothing to address the point that there is no genuine issue of material fact and that summary judgment in Defendants' favor is warranted.  R.M.'s new allegations include undisputed facts already in the record and highlight matters already addressed by the parties in the Defendants' Summary Judgment Motion.  R.M. has failed to present sufficient evidence to meet his burden of proof.  On summary

1

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1 | judgment proceedings, hypotheticals, what ifs, and speculative assertions are inadequate.  The
2 | Court should grant Defendants' motion.

3 | ## II.   PLAINTIFF'S NEW ALLEGATIONS

4 | Plaintiff's additional allegations fail to create a genuine issue of material fact to avoid
5 | summary judgment dismissal.  Briefly, these new allegations include:

6 | **1.**   **¶ 4.1**: That there were 13 cases of Peyronie's disease reported to the Federal Drug
7 | Administration in 2014 linked to the use of the drug Lisinopril.

8 | **Defendants' Response:**  Defendants previously asked the court to reject this internet derived
9 | information as the information had not been introduced with proper foundation by a medical
10 | expert.  Defendants' Reply In Support of their Motion for Summary Judgment ("Reply") at
11 | p.8, ll. 18-25 (Dkt. 85, p. 8).  Defendants alternatively asked that if the court accepted this
12 | information, that it also take judicial notice that in 2014 Lisinopril was prescribed over 4
13 | million times and that the 13 people who were reported to the FDA as taking Lisinopril and
14 | diagnosed with Peyronie's disease in 2014 were men between the ages of 30-39 who also
15 | took Viagra.  *Id.*  As Defendants asserted before, R.M. is not in this age group nor has he
16 | alleged that he was prescribed Viagra at any time relevant to his lawsuit.  Reply, p. 9 ll. 1-15
   | (Dkt. 85, p. 9).

17 |
18 | **2.**   **¶ 4.2**: That R.M. told Physician's Assistant ("PA-C") Jo Ella Phillips on July 31, 2014,
19 | that he noticed lumps in his penis about a year before and had painful nocturnal erections that
   | woke him.

20 |
21 | **Defendants' Response:**  These facts are undisputed.  *See* Attachment A to Jo Ella Phillips
22 | November 14, 2018 Declaration ("Phillips 11/14/18 Decl.")(Dkt. 58, p. 5-6).

23 | **3.**   **¶¶ 4.3, 4.4, 4.7 and 4.9**: That on July 31, 2017, both PA-C Phillips and Dr. James
24 | Edwards examined and assessed R.M. as having Peyronie's disease; Dr. Edwards said it was
25 | very unlikely that his disease was related to any of the medications R.M. had been taking; the
26 | three reviewed UpToDate.com, a website DOC subscribes to; on July 31, 2014, PA-C Phillips

DEFENDANTS' SUPPLEMENTAL BRIEF
REGARDING PLAINTIFF'S SECOND
AMENDED COMPLAINT
18-cv-05387-RBL-TLF

2

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

submitted a urology consultation request to the Care Review Committee ("CRC"); R.M. saw Dr. Edwards on November 20, 2014, at which time Dr. Edwards prescribed to him Trental, an oral medication used to treat Peyronie's disease; R.M. saw Dr. Edwards on January 8, 2015, and again complained about having painful nocturnal erections; and on January 8, 2015, Dr. Edwards submitted a second urology consultation request to the CRC.

**Defendants' Response:**  These facts are undisputed.  James Edwards Declaration dated November 14, 2018, ("Edwards 11/14/18 Decl."). ¶ 7 (Dkt.53); Phillips 11/14/18 Decl. ¶ ¶ 6, 7 (Dkt. 58).

**4.**     **¶¶ 4.4, 4.5, 4.10 and 4.12**: That all CRC members are employed by or contracted with DOC; the two requests submitted to the CRC were denied by consensus vote; the contents of the CRC reports are quoted by R.M. and speak for themselves.

**Defendants' Response:**  These facts are undisputed.  Attachment D to Phillips 11/14/18 Decl. (Dkt. 58); Attachment H to Edwards 11/14/18 Decl. (Dkt. 53).

**5.**     **¶ 4.6**: That both PA-C Phillips and Dr. Edwards found palpable plaque[1] in R.M.'s penis when they examined him on August 6, 2014; on October 6, 2017, Dr. Russell, the consultant, provided four treatment recommendations - topical and injected Verapamil, injected Xiaflex and a penile implant; Dr. Russell wrote that treatment by injection required a discrete lesion which he did not find when he examined R.M.'s penis.

**Defendants' Response:**  These facts are undisputed.  Attachment F to Edith Kroha 11/14/18 Declaration ("Kroha 11/14/18 Decl.")(Dkt. 52, p. 12-13).  Also, Defendants previously asked the court to reject R.M.'s internet derived information about Xiaflex as the information had

---

[1] The records on file variously identify palpable plaque as "plaque" "lesions" "nodules" and now in the Second Amended Complaint R.M. refers to them as "collagen scar tissue."

DEFENDANTS' SUPPLEMENTAL BRIEF
REGARDING PLAINTIFF'S SECOND
AMENDED COMPLAINT
18-cv-05387-RBL-TLF

3

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

not been introduced with proper foundation by a medical expert.  Reply, p. 9, ll. 1-15 (Dkt. 85).  Defendants' objections regarding internet based information continue here.

**6.**    **¶¶ 4.7 and 4.23**:  That R.M. submitted grievances and completed all grievance processes prior to filing suit.

**Defendants' Response:**   These facts are undisputed.   Defendants' Answer to Second Amended Complaint, ¶ 4.12 (Dkt. 93).

**7.**    **¶ 4.12**:  That following the CRC review on January 21, 2015 R.M. "did not follow up on his PD until 2017."

**Defendants' Response:**  This fact is admitted.  Second Amended Complaint ("2nd Am. Cmplt"), ¶ 4.12 (Dkt. 92).

**8.**    **¶ 4.15**:  That on June 13, 2017, ARNP Kroha said R.M.'s condition "had not gotten worse" but she also did not say "it had gotten better."

**Defendants' Response:**  These facts are undisputed.  Kroha 11/14/18 Decl. ¶ 6 (Dkt. 52).

**9.**    **¶ 4.20**:  That Dr. Russell, the consultant, assessed R.M. as having "Probable Peyronie's disease" based on R.M.'s reporting to him that he had "painful nocturnal erections" and "foreshortening of the penis" and that Dr. Russell identified four specific potential treatments.

**Defendants' Response:**  These facts are undisputed.  Attachment F to Kroha 11/14/18 Decl., ¶ 8 (Dkt. 52, p. 11-13).

**10.**    **¶¶ 4.21 and 4.22**:  That ARNP Kroha submitted a request to the CRC with Dr. Russell's four recommendations for treatment and that on November 8, 2017, the CRC denied all requests.

**Defendants' Response:**  These facts are undisputed.  2nd Am. Cmplt. ¶ 4.21 (Dkt. 92); Kroha 11/14/18 Decl. ¶8 (Dkt. 52).

DEFENDANTS' SUPPLEMENTAL BRIEF
REGARDING PLAINTIFF'S SECOND
AMENDED COMPLAINT
18-cv-05387-RBL-TLF

4

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

### III.     ISSUES PRESENTED

1.      Does R.M. fail to state a §1983 deliberate indifference claim when he fails to meet his burden of alleging specific facts to prove essential elements of that claim?

2.      Is each individual Defendant entitled to qualified immunity because R.M. fails to allege, and therefore only speculates, what conduct violated the Eighth Amendment, and consequently cannot prove that any such conduct violated a "clearly established" right?

### IV.     POINTS AND AUTHORITIES

If the non-moving party fails to establish the existence of a genuine issue of material fact, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986).  Despite asserting new allegations in a Second Amended Complaint, there is no evidence that supports an element essential to R.M.'s §1983 deliberate indifference and state medical negligence claims and, therefore, Defendants are entitled to summary judgment as a matter of law, based both on R.M.'s failure to state a claim and because the Defendants have qualified immunity from R.M.'s suit.

**A.     The Question of Whether Alternative Treatments Could Have Been Offered to R.M. in 2014 or 2015 Does Not Give Rise to a §1983 Deliberate Indifference Claim**

The United States Supreme Court in *Estelle v. Gamble*, 429 U.S. 97, 107 (1976) held that a decision to order or not to order additional treatments does not represent cruel and unusual punishment.  Thus, the fact that topical Verapamil, injected Verapamil, injected Xiaflex and penile implants may have existed as treatments for Peyronie's disease in 2014 but were not offered to R.M. as possible treatments does not give rise to a §1983 deliberate indifference claim. *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004).  These facts are dispositive and alone warrant dismissal.

In his Second Amended Complaint, R.M. appears to assert a new legal theory alleging that had the CRC granted the urology consultation on January 21, 2015, R.M. could have obtained a Xiaflex injection because he had palpable plaques in his penis at that time but because

DEFENDANTS' SUPPLEMENTAL BRIEF
REGARDING PLAINTIFF'S SECOND
AMENDED COMPLAINT
18-cv-05387-RBL-TLF

5

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1  they disappeared by the time he saw Dr. Russell, the consultant, on October 6, 2017, he was

2  denied the opportunity for such treatment.  2nd Am. Cmplt. ¶ 4.6. (Dkt. 92).  To prevail on this

3  theory, R.M. has the burden to prove that the disappearance of the plaque was not an

4  improvement of his symptoms but, instead, an injury caused by a defendant. *See, Wood v.*

5  *Housewright,* 900 F.2d 1332, 1334 99th Cir. 1990)(inmate given medical care at prison that met

6  his needs).  R.M. also has the burden to prove that a Xiaflex injection was an approved treatment

7  under the Offender Health Plan and that each individual CRC member's decisions to deny R.M.

8  a urology consultation on January 21, 2015, was the actual and proximate cause of his injury.

9      The undisputed facts show that at the time of the January 21, 2015, CRC meeting, R.M.

10  was actively engaged in the second month of a six month course of treatment of the medication

11  Trental and was being monitored by Dr. Edwards with six-week follow up visits.  R.M. agreed

12  to this course of treatment and continued taking Trental for its full course.  Edwards 11/14/18

13  Decl., ¶ 10 (Dkt. 53, pp. 4-5).  So if, as R.M. alleges in his Second Amended Complaint, a

14  Xiaflex injection was for the purpose of breaking down "collagen scar tissue" and R.M. admits

15  the scar tissue in his penis disappeared after January 8, 2015, the court must naturally ask,

16  "Where is the injury?"

17  **B.    R.M.'s Admitted Decision Not to Seek Medical Help for His Peyronie's Disease**
        **Caused the Delay in R.M. Receiving Treatment**

18

19      R.M. alleges that Dr. Russell told him that "if the Department had provided treatment

20  back in 2014 and 2015, it could have prevented the severity of the deformity" and that "the

21  damage would be permanent."  2nd Am. Cmplt, ¶ 4.20 (Dkt. 93).[2]  R.M. alleges the delay in

22  getting a urology consultation caused him injury.  The undisputed facts, however, show that no

23

24

25      [2] Defendants point out that what Dr. Russell "told" R.M. is hearsay that should not be considered as
        evidence for summary judgment purposes.  Fed. Rules of Evid. 802; *Montgomery v. Kitsap County*, 297 Fed. Appx.

26  613, 614 (9th Cir. 2008) (hearsay statements are inadmissible at summary judgment).

DEFENDANTS' SUPPLEMENTAL BRIEF               6            ATTORNEY GENERAL OF WASHINGTON
REGARDING PLAINTIFF'S SECOND                                        Torts Division
AMENDED COMPLAINT                                           7141 Cleanwater Drive SW
18-cv-05387-RBL-TLF                                                 PO Box 40126
                                                          Olympia, WA 98504-0126
                                                               (360) 586-6300

1   defendant caused any delay in R.M. getting treatment for his Peyronie's disease and, therefore,

2   as a matter of law, no defendant was deliberately indifferent to R.M.'s serious medical needs.

3        Even if, for the purposes of Defendants' Summary Judgment Motion, the court accepts

4   R.M.'s allegations about Dr. Russell's statements as admissible and as true, the undisputed facts

5   show that after August 6, 2014, R.M. admitted to several WSP medical providers that he did not

6   return to the WSP medical clinic because he was mad that the CRC for the decision it made.

7   Julie Mason Declaration, dated November 14, 2018, ¶ 5 (Dkt. 55); PA-C Jenn Ambrose Meyers

8   Declaration, dated November 15, 2018, ¶ 6 (Dkt 56); Edwards 11/14/18 Decl. ¶ 10 (Dkt 53).   It

9   was at the urging of R.N. Mason and PA-C Ambrose Meyers that R.M. visited Dr. Edwards on

10  November 20, 2014.  *Id.*   At this visit, Dr. Edwards prescribed Trental, an oral medication

11  treatment for Peyronie's disease, a treatment to which R.M. agreed.  Edwards 11/14/18 Decl, ¶

12  10 (Dkt. 53).   R.M. also agreed to a six week follow up on January 8, 2015.  *Id.*  To the extent

13  R.M. alleges that he was injured because he was not offered Xiaflex injections in 2014 while he

14  still had palpable plaque in his penis, the court should find that such alleged injury was not

15  actually or proximately caused by any defendant but was due to R.M.'s own choices not to seek

16  treatment for his Peyronie's disease after August 6, 2014 until November 20, 2014.  Then, on

17  that day, R.M. accepted taking a six month course of Trental.  *Id.*  The court should rule based

18  on these undisputed facts that R.M. cannot prove any deliberate indifference by any defendant

19  in the R.M.'s medical care in 2014.

20       At the January 8, 2015, R.M. agreed to continue taking Trental and also agreed to another

21  follow-up visit on March 5, 2015.  Edwards 11/14/18 Decl. ¶ 11 (Dkt, 53, pp. 5-6).  At the March

22  5, 2015 medical visit, R.M. met with PA-C Phillips and he did not discuss his Peyronie's disease

23  with her.  Phillips 11/14/18 Decl. ¶ 10 (Dkt. 58).  After March 5, 2015, R.M. admits he did not

24  seek treatment for his Peyronie's disease until January 2017.  2nd Am. Cmplt. ¶ 4.12 (Dkt. 92).

25  Based on these facts, the Court should hold that any delay in R.M. obtaining medical treatment

26

DEFENDANTS' SUPPLEMENTAL BRIEF
REGARDING PLAINTIFF'S SECOND
AMENDED COMPLAINT
18-cv-05387-RBL-TLF

7

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1  for his Peyronie's disease in 2015 was due to R.M.'s own choice not to seek treatment for his

2  disease and not due to any deliberate indifference of any defendant.

3  **C.    There Are No New Allegations Alleging Specific Wrongful Conduct by Any Defendant**

4

5         To prevail in a §1983 deliberate indifference claim, R.M. must allege the particulars of

   conduct time, place and the person responsible.  *See, Evancho v. Fisher*, 423 F.3d 347, 354 (3rd

6

7  Cir. 2005).  R.M. alleges that the second reason he did not seek treatment for his Peyronie's

   disease after January 8, 2015 was because he "had been told that his condition would resolve

8

9  itself in two years."  2nd Am. Cmplt. ¶ 4.12 (Dkt. 92).  R.M. has the burden to establish the

   elements of this claim.  R.M., however, does not identify any individual defendant as the person

10

11 making this statement or allege any other facts such as time, place to establish the elements of

   this claim.  This omission warrants summary judgment.

12

13        R.M. does not allege nor are there any facts in the record that link a statement by a

14 Defendant to any injury.  Furthermore, because R.M. admits that he unilaterally chose not to

   follow up on his Peyronie's disease treatment after the CRC denied the consultation requests, it

15

16 would be impossible to know if the unidentified individual's statement to R.M. was the actual

   and proximate cause of his alleged injury.  Without such supporting evidence, the court should

17

18 find, as a matter of law, that R.M. cannot establish a §1983 deliberate indifference claim as to

   any defendant.

19

20        When ARNP Edith Kroha examined R.M.'s penis on June 13, 2017, she found no lesions

21 there.  Edith Kroha 11/14/18 Decl. ¶ 6 (Dkt. 52, pp. 2-3).  When Dr. Kenney examined R.M. on

   July 19, 2017, as part of investigating R.M.'s grievance, he also found no discrete lumps and he

22

23 found R.M's penis to have normal cavernosal structures, normal meatus and normal scrotal

   contents.  These findings led Dr. Kenney to state in his report that his findings did not match

24

25 R.M.'s reported history.  David Kenney 11/14/18 Declaration, ¶ 7 (Dkt. 51).  Similarly, upon

26 physical examination of R.M.'s penis on October 6, 2017, Dr. Russell reported that he could

DEFENDANTS' SUPPLEMENTAL BRIEF
REGARDING PLAINTIFF'S SECOND
AMENDED COMPLAINT
18-cv-05387-RBL-TLF

8

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1   locate "no discrete nodule on the shaft of the penis" and found "Meatus is normal.  Scrotal

2   contents normal."  Attachment F to Kroha 11/14/18 Decl. (Dkt. 52, p. 12).

3        It is undisputed that R.M.'s palpable plaque disappeared.  The only conclusion the court

4   can draw from this fact is that treatment was provided, R.M. did not seek further treatment for

5   two years, at which time the prior physical findings were no longer present.

6   **D.    If R.M. Believes the Drug Lisinopril Caused his Peyronie's Disease, His Remedy is
        to Sue the Manufacturer of Lisinopril, Not the Defendants**

7        The record shows that throughout the time asserted by R.M. as the claim, R.M. consented

8   to taking Lisinopril to address his hypertension issues and DOC medical practitioners actively

9   monitored his hypertension.  Phillips 11/14/18 Decl. ¶ 10 (Dkt. 58, p. 4); Attachment C to Wei

10  Weller 11/15/18 Decl. (Dkt. 60, p. 5).  On November 9, 2016, ARNP Kroha determined that

11  R.M. was no longer hypertensive and could stop taking the medication.  *Id*.  The successful

12  treatment of R.M.'s hypertension through the medication Lisinopril is not a deliberate

13  indifference to R.M.'s serious medical needs.  Moreover, even though Dr. Edwards told R.M.

14  that the cause of Peyronie's disease is unknown and was very unlikely to be caused by any drug

15  R.M. was taking, if R.M. believes Lisinopril caused his Peyronie's disease, he has the burden to

16  prove this allegation.  Even if he could prove his claim his remedy is against the manufacturer

17  of Lisinopril, not any of these defendants.

18  **E.    Nothing in the Second Amended Complaint Defeats Defendants' Qualified
        Immunity from R.M.'s lawsuit**

19

20        Plaintiffs have pointed the Court to no case that supports the proposition that medical

21  providers must provide an inmate with a specialist consultation when an in-house prison

22  physician is actively treating and monitoring an inmate who is on a 180 day course of medication

23  recommended for people with his disease.  It is R.M.'s burden to prove a "clearly established"

24  violation of standard medical practice.  Nothing in the Second Amended Complaint can establish

25  this point.  Because Plaintiff has failed to direct the Court to any applicable legal authority or

26  specific facts, the Court must hold that each individual defendant who participated in either the

DEFENDANTS' SUPPLEMENTAL BRIEF
REGARDING PLAINTIFF'S SECOND
AMENDED COMPLAINT
18-cv-05387-RBL-TLF

9

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1   August 6, 2014 or the January 21, 2015, CRC meeting did not violate a clearly established Eighth

2   Amendment right.  Moreover, even if R.M. could prove that a clearly established constitutional

3   right is at issue, the Court should hold that where R.M. was under active treatment with a

4   medication recommended for people with Peyronie's disease, that it would not have been clear

5   to any member of the CRC under that circumstance that denying a urology consultation was

6   unlawful. On these grounds, the court should hold that each Defendant is each entitled to

7   immunity from R.M.'s suit.

8   **F.      None of Dr. Russell's Recommendations Are Approved Treatments in the Offender
        Health Plan So Were Not Options Available to R.M. at Any Time**

9
        The Offender Health Plan is the State's medical plan provided to inmates.  Attachment

10  A to Edwards 11/14/18 Decl. (Dkt. 53, pp. 8-47).  Section XVI of the Plan explicitly identifies

11  medical services the Offender Health Plan does not cover.  *Id.* (Dkt. 53, pp 32-35).  These are

12  identified as "Level 3: Not Medically Necessary Care. Not authorized to be provided."  Among

13  care that is expressly not provided are:

14
        . . .

15      Consultant appointments: Either initial or follow-up where the skills requires
        should be within the skill set of a primary care provider

16
        Consultant recommendations: including instructions and orders when not a Level

17      1 intervention.  See Special Circumstances or Exceptions above.
        . . .

18      **Cosmetic treatment or surgery**: Including, but not limited to, the following

19      examples:  mammoplasty (augmentation or reduction, with or without
        prosthetic), **skin lesion removal by excision, chemical or cryoablation, scar**

20      **revision**, keloid injection or removal, liposuction
        . . .

21      **Erectile Dysfunction**:  **evaluation or treatment of erectile dysfunction**

22      **including medical or surgical treatment, implanted prostheses**, external
        erectile aids

23
        **Experimental therapies** or tests:  **any care which** is currently under

24      investigation or **has unproven value**
        . . .

25

26

DEFENDANTS' SUPPLEMENTAL BRIEF
REGARDING PLAINTIFF'S SECOND
AMENDED COMPLAINT
18-cv-05387-RBL-TLF

10

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1  *Id. at* p. 24-26 (bolding added).

2  One new allegation in the Second Amended Complaint is that consultant Dr. Russell's

3  assessment and recommended plan were presented to the CRC on November 8, 2017 and the

4  committee deemed each of the recommended treatments not medically necessary.  2nd Am.

5  Cmplt. Dkt. 92, ¶ 4.22.  The Offender Health Plan explicitly states that the DOC is not obligated

6  to execute any consultant's recommendation.[3]  Attachment A to Edwards 11/14/18 Decl. (Dkt.

7  53, p. 23).  R.M. has the burden to prove that either Dr. Fetroe or Dr. Sawyer was deliberately

8  indifferent to R.M.'s serious medical needs in denying the recommended treatments despite the

9  fact that, as Defendants will show below, the Offender Health Plan does not authorize the

10  treatments Dr. Russell recommended.

11  First, as to the topical medication Verapamil, even Dr. Russell recognized that this

12  medical was ineffective, stating that this was the most conservative approach "but cures were

13  not that common".  Attachment F to Kroha 11/14/18 Decl. (Dkt. 52, pp. 11-13).  Being a

14  treatment of "unproven value", the CRC correctly denied this treatment.  R.M. has not identified

15  any clearly established Eighth Amendment law that requires a State to provide an inmate with a

16  medical treatment that is known to be ineffective and of unproven value and the court should so

17  hold.

18  Similarly, the court should find it reasonable and justified for the CRC on November 8,

19  2017, to deny the request for R.M. to receive injections of either Verapamil or Xiaflex.  Dr.

20  Russell stated in his report that the use of chemical injections requires a discrete lesion to inject

---

21  [3] Section XIII.ii of the Offender Health Plan specifically states the role of consultants and their
22  Recommendations as follows:

23  During the course of health care, patients are sometimes referred to consultants including
specialists, ER providers and hospital providers.  Such referrals often generate recommendations
including instructions and orders.  **DOC is not obligated to execute these recommendations,**

24  **which are subject to the same criteria as any other DOC provided care.**  It is the responsibility
of the patient's primary care practitioner to evaluate the appropriateness and necessity of the

25  recommendations in light of the patient's global health care while considering the OHP, DOC
policy, and any other pertinent factor.  When primary care practitioners do not execute consultant

26  recommendations, they are expect to explain their reasons to the patient and document the reasons
in the health record.  Attachment A to Edwards 11/14/18 Decl. (Dkt. 53,p. 23),

---

DEFENDANTS' SUPPLEMENTAL BRIEF
REGARDING PLAINTIFF'S SECOND
AMENDED COMPLAINT
18-cv-05387-RBL-TLF

11

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1   and in examining R.M. he did not find any discrete lesions on R.M.'s penis.  *Id.*  Dr. Russell

2   expressly stated in his recommended plan that "I don't believe [R.M.] is a candidate for

3   intracorporeal injections based on current findings."  *Id.*  R.M. has not identified any clearly

4   established Eighth Amendment law that would require a State to provide medical treatment to

5   an inmate who does not meet the physical requirements for the treatment and that even the

6   consultant does not recommend.  Additionally, the Offender Health Plan expressly does not

7   authorize the removal of scar tissue through the use of chemical injections and the court should

8   so hold.

9          The third recommendation Dr. Russell made was a penile implant.  *Id.*  The Offender

10   Health Plan expressly does not authorize inmates to receive medical treatment for erectile

11   dysfunction.  Attachment A to Edwards 11/14/18 Decl., p. 25 (Dkt. 53, p. 33).  Additionally, the

12   Offender Health Plan specifically does not authorize inmates to receive penile implants.  *Id.*  Dr.

13   Russell recognized this prohibition when he stated in his October 6, 2017, report, "Sometimes a

14   penile implant is the best solution to both maintain quality of erections and prevent further loss

15   of length.  That is certainly the most aggressive, radical approach . . . I am not sure whether, as

16   a prisoner, he would be considered for a penile implant."  Exhibit F to Kroha 11/14/18 Decl.

17   (Dkt. 52, p. 13).  R.M. has not identified any clearly established Eighth Amendment law that

18   requires a State to provide an inmate with medical services for erectile dysfunction and/or to

19   provide inmates with penile implants and the court should so hold.

20                                    **V.    CONCLUSION**

21          For all of the reasons stated above, the Defendants request that the Court hold, as a matter

22   of law, that allegations in R.M.'s Second Amended Complaint do not raise any issue of material

23   fact, that R.M. fails to state a claim upon which relief can be granted, and that the undisputed facts

24   establish that Defendants are entitled to summary judgment and qualified immunity as a matter of

25   law.  On these grounds, Defendants request that the Court dismiss R.M.'s 42 U.S.C. §1983 claim

26   and his pendent State medical negligence claim with prejudice.

DEFENDANTS' SUPPLEMENTAL BRIEF
REGARDING PLAINTIFF'S SECOND
AMENDED COMPLAINT
18-cv-05387-RBL-TLF

12

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1    DATED this 22th day of March, 2019

2                                      ROBERT W. FERGUSON
                                       Attorney General
3
                                       s/ Michelle Hitomi Hansen
4                                      MICHELLE HITOMI HANSEN, WSBA No. 14051
                                       Assistant Attorney General
5                                      PO Box 40126
                                       Olympia, Washington  98504-0126
6                                      Tel: (360) 586-6300
                                       E-mail: michelleh3@atg.wa.gov
7                                      Attorneys for Defendants State of Washington,
                                       Allbert, Berglin, Lopez de Castilla, Edwards, Fetroe,
8                                      Hammond, Kenney, Keppler, Kroha, Larsen,
                                       Longano, Moore, Neisner, Newlon, Palmer, Remy,
9                                      Reyes, Smith, Sawyer and Stanbury

10

11                                     s/Rhianna M. Fronapfel (signature authorized by
                                       email dated March 22, 2019)
12                                     Rhianna M. Fronapfel, WSBA #38636
                                       Bennett Bigelow & Leedom, P.S.
13                                     601 Union Street, Ste 1500
                                       Seattle, WA  98101-1363
14                                     rfronapfel@bbllaw.com
                                       Attorney for Defendant
15                                     Dale Robertson, PA-C

16                                     s/Ketia Wick (signature authorized by email dated
                                       March 22, 2019)
17                                     Ketia B. Wick
                                       FAVROS Law
18                                     701 5th Avenue, Ste 4750
                                       Seattle, WA  98104
19                                     ketia@favros.com
                                       Attorneys for Defendant
20                                     Sheri Malakhova, MD

21

22

23

24

25

26

DEFENDANTS' SUPPLEMENTAL BRIEF                13          ATTORNEY GENERAL OF WASHINGTON
REGARDING PLAINTIFF'S SECOND                                        Torts Division
AMENDED COMPLAINT                                            7141 Cleanwater Drive SW
18-cv-05387-RBL-TLF                                                  PO Box 40126
                                                            Olympia, WA 98504-0126
                                                                   (360) 586-6300

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22th day of March, 2019, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system and caused to be served a copy of this document on all parties or their counsel of record on the date below as follows:

Attorneys for Plaintiff:

Michael Kahrs, Esq.
Kahrs Law Firms, P.S.
2208 NW Market St., Suite 414
Seattle,  WA  98107
mike@kahrslaw firm.com

Dan N. Fiorito III
Law Office of Dan N. Fiorito III
844 NW 48th Street
Seattle, WA  98107
dan@danfiorito.com

Attorney for Defendant
Dale Robertson, PA-C:

Rhianna M. Fronapfel
Bennett Bigelow & Leedom, P.S.
601 Union Street, Ste 1500
Seattle, WA  98101-1363
rfronapfel@bbllaw.com

Attorneys for Defendant
Sheri Malakhova, MD:

Ketia B. Wick
FAVROS Law
701 5th Avenue, Ste 4750
Seattle, WA  98104
ketia@favros.com

DATED this 22th day of March, 2019.

ROBERT W. FERGUSON
Attorney General

s/ Michelle Hitomi Hansen
MICHELLE HITOMI HANSEN, WSBA No. 14051
Assistant Attorney General
PO Box 40126
Olympia, Washington  98504-0126
Tel: (360) 586-6300
E-mail: michelleh3@atg.wa.gov
Attorneys for Defendants

DEFENDANTS' SUPPLEMENTAL BRIEF
REGARDING PLAINTIFF'S SECOND
AMENDED COMPLAINT
18-cv-05387-RBL-TLF

14

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300