The Honorable Ronald B. Leighton
Magistrate Judge Theresa L. Fricke

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

R.M.,

                Plaintiff;

       vs.

STATE OF WASHINGTON, et al.,

                Defendants.

NO. 18-cv-05387-RBL

PLAINTIFF'S RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF

ORAL ARGUMENT REQUESTED

NOTED FOR: APRIL 12, 2019

Plaintiff R.M. hereby responds to Defendants' supplemental brief. In his Response, R.M. will show that the Defendants are not entitled to summary judgment.

## I.  INTRODUCTION

The Defendants have attempted to use their unquestioning reliance on the Offender Health Plan (OHP) to justify ignoring the most critical argument for treatment – R.M.'s pain. R.M. shows that the Defendants really have no idea of his condition because they never investigated it. Since they never did the proper test, any assertion by them that R.M. was not suffering pain must be ignored because it is not supported by any evidence. Finally, the third round of denials by the Care Review Committee in 2017 compounds the deliberate indifference and provides further evidence to support the denial of qualified immunity.

PLAINTIFF'S RESPONSE TO
DEFENDANTS' SUPPLEMENTAL
BRIEF

1

**Kahrs Law Firm, P.S.**
2208 NW Market St., Suite 414 Seattle WA 98107
Ph: 206-264-0642 Fax: 206-237-8555
mike@kahrslawfirm.com

## II.     EVIDENCE RELIED UPON

R.M. relies upon the pleadings and exhibits filed already on record.

## III.     ARGUMENTS AND AUTHORITY

**A.     The Failure to Provide Treatment Gives Rise to a § 1983 Deliberate Indifference Claim.**

The Defendants have argued that the failure to order additional treatments does not represent cruel and unusual punishment. Such an argument misses the basic question – does the failure to provide any treatment violate the Eighth Amendment? The only possible answer is yes.

R.M. had been provided a poor treatment option, a prescription for 180 days of Trental, on November 20, 2014. R.M. continued to grieve the lack of medical care even after being provided the Trental for two months with his final appeal dated January 16, 2015. The only reasonable inference is that the Trental was not addressing his continued pain. No medical practitioner followed up on the efficacy of the Trental and R.M.'s prescription stopped May 18, 2015. R.M. had already applied to the Care Review Committee (CRC) twice at this time to no effect.[1] There was absolutely no logical reason for him to expect differently. This case is not about choosing treatments because the Defendants were indifferent to R.M.'s suffering, otherwise he would have been provided more care.

---

[1] The Defendants challenged paragraph 4.12 of the Second Amended Complaint for its statement that R.M. had been told the situation would resolve itself in a couple of years, stating R.M. failed to provide the source of this statement. Unlike the statement made during the care review committee attributed to some unknown medical provider claiming they worked in the urology department of Harborview Medical Center, the two year period is directly referenced in the August 6, 2014 CRC report and was quoted to R.M. by PA Phillips on August 25 of 2014. R.M. Decl., Exhibit 2; Kahrs Decl., Exhibits G and H. R.M. would also note it was almost two years to the date between R.M. seeing Dr. Edwards January 8, 2015 and seeing ARNP Kroha on January 3, 2017. Kahrs Decl., Exhibit P.

PLAINTIFF'S RESPONSE TO
DEFENDANTS' SUPPLEMENTAL
BRIEF

2

**Kahrs Law Firm, P.S.**
2208 NW Market St., Suite 414 Seattle WA 98107
Ph: 206-264-0642 Fax: 206-237-8555
mike@kahrslawfirm.com

**B.      The Offender Health Plan's Approved Treatment Is Irrelevant to Whether or Not an Inmate's Medical Treatment Violated the Constitution.**

Next, the Defendants claim R.M. would have to prove a Xiaflex injection was an approved treatment in the OHP and the failure to approve a consult was the cause of R.M.'s injury. The first part of this claim is patently absurd. Medical treatment progresses faster than the bureaucratic process of amending a document like the Offender Health Plan. Once a new drug is approved by the FDA, then normal health care providers will consider its use – especially the specialists with the particularized knowledge of medical advancements in their field. Xiaflex was the first drug ever approved as treatment for Peyronie's Disease.

The Defendants focus on issues involving cosmetic treatment and erectile dysfunction that are listed in the OHP misses the whole point of this lawsuit. This is about pain treatment. Nor can the Defendants claim to know that R.M. wasn't suffering from pain due to bending of his penis. Not once during this process did any treatment provider create an artificial erection to ascertain the extent of the injuries. Declaration of Michael Kahrs, Exhibit 19, p. 3. And then, having received Dr. Russell's report, the Defendants failed to refer R.M. for an evaluation to a specialist with even more experience with these issues at major hospitals like the University of Washington. *Id*.

R.M. would also point out that Xiaflex was not an experimental therapy or test which was prohibited under the OHP or, as highlighted by the Defendants for some reason, has unproven value. The very fact that Xiaflex was the first FDA approved drug for the treatment of Peyronie's Disease absolutely negates the argument that it had unproven value.

\\\

\\\

PLAINTIFF'S RESPONSE TO
DEFENDANTS' SUPPLEMENTAL
BRIEF

3

**Kahrs Law Firm, P.S.**
2208 NW Market St., Suite 414 Seattle WA 98107
Ph: 206-264-0642 Fax: 206-237-8555
mike@kahrslawfirm.com

**C.** **The Denial of Adequate Care Was Not Factually Based.**

In Dr. Russell's report, he described R.M.'s disease over the past three years as fluctuating in location and without stabilization resolution. *Id.* at 2. The fact that he didn't have a discrete lesion during the consult clearly does not alter the diagnosis. For example, there was also a possible diagnosis of increased dorsal firmness along the whole length of his penis. As stated in Dr. Russell's' report, the only way to ascertain the amount of damage to the penis caused by PD is to create an artificial erection. Without such a test, the extent of permanent damage cannot be ascertained. Because the Defendants failed to obtain such test results, it cannot make a claim that he was not suffering any pain due to PD. In other words, the deliberate indifference toward R.M.'s serious medical condition cannot be used to bolster the proposition that R.M. was not in pain.  To find otherwise would only increase the incentive for a prison to avoid treating a prisoner with a serious medical need.

**D.** **The Newer Facts Raise New Concerns.**

The Defendants argue there is nothing new under the sun in the Second Amended Complaint. Examination of the facts support quite a different interpretation. The Defense relies on the statement by Dr. Kenney that treatment options in 2017 were not completely satisfactory and such is the condition today. Declaration of J. David Kenney (Dkt. 51, 67). This statement was based on his medical school and managing patients with this condition. Nowhere does he discuss any review of current literature. Nor does he mention talking with a specialist. Id. Finally, the urologist R.M. did see admitted the distinct possibility that R.M. was still suffering from the effects of PD and without more, could not make any determination on the severity of the pain R.M. stated he was suffering.

PLAINTIFF'S RESPONSE TO
DEFENDANTS' SUPPLEMENTAL
BRIEF

4

**Kahrs Law Firm, P.S.**
2208 NW Market St., Suite 414 Seattle WA 98107
Ph: 206-264-0642 Fax: 206-237-8555
mike@kahrslawfirm.com

What the newer facts show is that Dr. Russell provided suggestions of further tests and approaches along with actual recommendations. In Dr. Russell's report, he stated that topical verapamil was the most conservative approach with cures unlikely. Kahrs Decl., Exhibit 19. He still recommended a prescription for this cream. *Id*. He had problems with intracorporeal verapamil or Xiaflex being used because it requires a discrete lesion to inject. R.M. had such lesions earlier and didn't have them in 2017 during his appointment with Dr. Russell, making this treatment unreasonable at the time. The penile implant was a possible solution because it would keep the penis straight, limiting the pain. *Id*. The Defendants argue against this ignoring its stated purpose and instead focusing on its medical benefits. The CRC denied all three, providing no reasons to R.M. for why the requests were denied. Declaration of R.M., Exhibits 10-12. This is a violation of the OHP.

The OHP requires an explanation if a recommendation by a specialist is not followed. After R.M. grieved the denials, the answers ostensibly provided reasons they were denied. The topical verapamil was denied because of its lower cure rate.[2] R.M. Decl. Exhibit 13. R.M. had complained of pain when he saw Dr. Russell. Ignoring the one treatment which, although unlikely, might have brought pain relief is a violation of the Eighth Amendment. Relieving pain is always medically necessary and constitutionally required.

\\\

\\\

\\\

---

[2] The Defendants deliberately conflate a lower cure rate with a claim it is "known to be ineffective an unproven value." Supplemental Brief, pp. 10-11. In doing do, they fail to provide any evidence to show that it has an unproven value and is ineffective.

PLAINTIFF'S RESPONSE TO
DEFENDANTS' SUPPLEMENTAL
BRIEF

5

**Kahrs Law Firm, P.S.**
2208 NW Market St., Suite 414 Seattle WA 98107
Ph: 206-264-0642 Fax: 206-237-8555
mike@kahrslawfirm.com

**E.**   **Defendants Are Not Entitled to Qualified Immunity.**

As previously argued, the Defendants are not entitled to qualified immunity. R.M. has previously this Court with legal arguments backed up with facts and the law. The facts in the Second Amended Complaint add to the facts supporting denial of qualified immunity.

When a general practitioner, like Dr. Edwards, makes a referral for a consult, even after consulting the on-line database, such a decision reflects that he did not feel comfortable with treating R.M. without obtaining a consult. Dr. Edwards' inability to recommend a proper treatment regime is proved by urologist Dr. Russell's recommended treatment. Specifically, Dr. Russell did not recommend Trental and instead recommended topical verapamil.[3]

The decision of the CRC in August of 2014 was not based on any treatment being provided. More importantly, the January 21, 2015 decision of the CRC denying a consult was based solely on the incorrect assessment that R.M. was not suffering pain. The Defendants through the CRC deliberately ignored R.M.'s continued pain due to Peyronie's disease. Rather rely on their own recommendation; the Defendants assumed, without medical support, that R.M.'s condition would resolve itself within two years. To make matters worse, when they received information from the urologist, the Defendants took no action – therefore not entitling them to qualified immunity.

\\\

\\\

\\\

---

[3] This argument is not provided to argue (although it is true) that Dr. Edwards prescribed an ineffective medication. Rather, it is to show that the reason specialists like Dr. Russell are utilized is to rely on their particularized knowledge in a specific area.

PLAINTIFF'S RESPONSE TO
DEFENDANTS' SUPPLEMENTAL
BRIEF

6

**Kahrs Law Firm, P.S.**
2208 NW Market St., Suite 414 Seattle WA 98107
Ph: 206-264-0642 Fax: 206-237-8555
mike@kahrslawfirm.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## IV.    <u>CONCLUSION</u>

For the reasons stated above, the Defendants are not entitled to summary judgment. Nor are they entitled to qualified immunity. At a minimum, more discovery is required and R.M. must be given the opportunity to provide an expert witnesses.

DATED this 5th day of April, 2019.

KAHRS LAW FIRM, P.S.


/s *Michael C. Kahrs*
MICHAEL C. KAHRS, WSBA# 27085
Attorney for Plaintiff


LAW OFFICE OF DAN N. FIORITO III


/s *Dan N. Fiorito III*
DAN N. FIORITO III, WSBA #34009

PLAINTIFF'S RESPONSE TO
DEFENDANTS' SUPPLEMENTAL
BRIEF

7

**Kahrs Law Firm, P.S.**
2208 NW Market St., Suite 414 Seattle WA 98107
Ph: 206-264-0642 Fax: 206-237-8555
mike@kahrslawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 5, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the individuals listed below and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: N/A.

Rhjianna M. Fronapfel
Elizabeth A. Leedom
Bennett Bigelow & Leedom P.S.
601 Union St. Ste. 1500
Seattle, Wa 98101
rfronapfel@bbllaw.com
eleedom@bbllaw.com

Ketia B. Wick
Fain Anderson Vanderhoef
Rosendahl O'Halloran Spillane, PLLC
925 Fourth Ave., Ste. 2300
Seattle, WA 98104
ketia@favros.com

Michelle Hitomi Hansen
Washington Attorney General's Office
7141 Cleanwater Dr. SW
P.O. Box 40126
Olympia, WA 98504
Michelleh3@atg.wa.gov

Brian P. Waters
Johnson Graffe Keay Moniz & Wick LLP
925 Fourth Ave. , Ste. 2300
Seattle, WA 98104
brian@jgkmw.com

s/ *Michael C. Kahrs*          04/05/2019
Michael Kahrs                   Date

PLAINTIFF'S RESPONSE TO
DEFENDANTS' SUPPLEMENTAL
BRIEF

8

**Kahrs Law Firm, P.S.**
2208 NW Market St., Suite 414 Seattle WA 98107
Ph: 206-264-0642 Fax: 206-237-8555
mike@kahrslawfirm.com