UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ROBERT MADDAUS,<br><br>               Plaintiff,<br><br>  v.<br><br>JAMES EDWARDS and EDITH KROHA,<br><br>               Defendant. | CASE NO. 18-cv-5387 BHS<br><br>ORDER |

THIS MATTER is before the Court on plaintiff Robert Maddaus's motion for attorneys' fees, Dkt. 251.

Maddaus seeks attorneys' fees and costs under 42 U.S.C. § 1988(b) as the prevailing party on his § 1983 claims against defendants Edwards and Kroha. He acknowledges the Prison Litigation Reform Act (PLRA) presumptively limits the hourly rate of a lodestar attorneys' fee award. That amount is 150% of the PLRA hourly rate, ($164 in 2023, $172 in 2024). The PLRA presumptive maximum rate was $258 per hour for the bulk of the work performed on the case. Dkt. 251 at 3–5 (citing 42 U.S.C. § 1997e); Dkt. 258 at 4. The PLRA also caps the total fee award at 150% of the judgment,

ORDER - 1

which does not apply here, and provides that 25% of a fee award must come from the plaintiff's judgment; $100,500 in this case. *Id*.

Maddaus has submitted detailed timekeeping records documenting the hours his Court-appointed attorneys spent representing him in 2023 and 2024. Dkt. 252 at 6–16. At the PLRA-limited rates, these hours amount to **$157,869.60** in attorneys' fees. *Id*. at 16. He seeks an enhancement of these fees (increasing the rates to the attorneys' reasonable, "normal" rates) based on the exceptional result obtained— a judgment twenty times the amount offered—and because the attorneys obtained it on a very short timeline. Dkt. 251 at 2 (citing *Kelly v. Wengler*, 822 F.3d 1085, 1100–03 (9th Cir. 2016)). Maddaus seeks **$252,251.50** in attorneys' fees, which is about a 1.6 multiplier of the PLRA capped lodestar fees. Maddaus's motion seeks **$9,486.62** in costs, for a total of **$261,738.12**. Dkt. 251 at 1.

Maddaus's Reply asserts that his attorneys spent an additional 60.6 hours on the fee motion and in successfully responding to defendants' motion for judgment as a matter of law. Dkt. 260 at 7 (citing Mennemier Declaration, Dkt. 261).

Defendants do not oppose an award of fees under § 1988 and the PLRA, and do not strenuously[1] dispute the hours Maddaus's attorneys spent. They do argue that "nothing about the law, facts, or posture of this warrants an enhancement" above the PLRA hourly rates. Dkt. 258 at 2.

---

[1] Defendants assert that Maddaus's attorneys logged and submitted 28.6 hours that expressly reflected administrative tasks or that were unclear about whether they reflected legal or administrative trial preparations. They advocate for a **$7,378.80** deduction from the PLRA lodestar amount. Dkt. 258 at 5 n.2.

ORDER - 2

**DISCUSSION**

**A.   Attorneys' Fees**

The first step in determining reasonable attorneys' fees in any case is to calculate the lodestar figure. This figure is the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate for such work. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Court should exclude overstaffed, redundant, or unnecessary time. *Id.* at 434. The plaintiffs' success is a "crucial factor" in determining an appropriate award. *Id.* at 440.

Defendants do not dispute that the vast bulk of the time Maddaus's attorneys spent on this case was reasonable, and the Court finds that it was.

In cases free of the PLRA cap, the Court determines reasonable hourly rates by looking to the "prevailing market rates in the relevant community." *Bell v. Clackamas County*, 341 F.3d 858, 868 (9th Cir. 2003). This usually involves an evaluation of the hourly rates of comparable attorneys in the forum district. *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). The Court should also consider the experience, skill, and reputation of the attorney requesting fees. *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995). It may rely on its own knowledge and familiarity with the legal market in determining a reasonable hourly rate. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

Maddaus demonstrates, and based on its experience in other attorney fee disputes the Court is persuaded, that Maddaus's attorneys' "usual" billing rates are reasonable. Dkt. 252.

1   The issue is whether the Court should lift the PLRA's presumptive hourly rate cap
2   ($258 per hour for most of time spent on this case) and calculate Maddaus's fee award
3   instead using his attorneys' higher, reasonable hourly rates.
4   Maddaus accurately asserts that in determining whether to modify PLRA lodestar
5   fees the Court looks to the so-called *Kerr* factors. Dkt. 251 at 4 (citing *Kelly*, 822 F.3d at
6   1099, and *Edmo v. Corizon, Inc.*, 97 F.4th 1165 (9th Cir. 2024) ("the [*Kerr*] standard
7   broadly governing when to give enhancements under § 1988 . . . applies equally to PLRA
8   cases.")). The Court views the request for fees above the PLRA hourly rate as akin to a
9   request for a fee award above the attorney's customary rate.
10  Under *Kerr*, once the Court determines the lodestar amount, it determines whether
11  to adjust the lodestar figure up or down, based on factors not subsumed in that figure. The
12  *Kerr* factors are:
13      (1) the time and labor required,
14      (2) the novelty and difficulty of the questions involved,
15      (3) the skill requisite to perform the legal service properly,
16      (4) the preclusion of other employment by the attorney due to acceptance of the
17  case,
18      **(5) the customary fee**,
19      (6) whether the fee is fixed or contingent,
20      **(7) time limitations imposed by the client or the circumstances**,
21      **(8) the amount involved and the results obtained**,
22      (9) the experience, reputation, and ability of the attorneys,

ORDER - 4

      **(10) the 'undesirability' of the case**,

      (11) the nature and length of the professional relationship with the client, and

      **(12) awards in similar cases**.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976). Maddaus argue that the five bolded factors weigh in favor of lifting the PLRA cap, and that none weigh against. Dkt. 251 at 7.

      The fifth *Kerr* factor, "customary fee," plainly supports lifting the stay, but the PLRA cap implicitly acknowledges that the rate charged in its absence would, customarily, be more. Defendants fairly point out that some portion of counsel's customary rate reflects intellectual property expertise that was not at play in this case. Dkt. 258 at 8. Maddaus's attorneys' litigation experience and conduct in the case supports their rates. The fact that they typically do other types of work for the rates they charge weighs in favor of an enhanced fee award in this case. This issue is addressed below. *Kerr*'s customary fee factor does not weigh heavily in the Court's determination of whether to lift the PLRA cap.

      The seventh *Kerr* factor, "time constraints," firmly supports lifting the cap. Maddaus's attorneys accepted the Court's appointment as Maddaus's pro bono counsel less than six months before they obtained a substantial verdict in his favor, in a case that State had been vigorously defending for five years. Defendants point out that the case had been pared down dramatically by the time counsel appeared, Dkt. 258 at 9. But the prior determinations counsel faced when they arrived—perhaps chief among them, the lack of an expert—support the conclusion that they obtained an exemplary result in a short time,

in conditions that would likely have been better had they been involved earlier. The Court's prior determinations in the case do not support the conclusion that counsel did not face unreasonable time constraints.

The eighth *Kerr* factor—the "amount involved, and the result obtained"—strongly supports awarding fees based on an hourly rate above the presumptive PLRA cap. Defendants argue that Maddaus obtained a verdict far less than he asked for in closing, Dkt. 258 at 10, but the more telling comparison is to the amount the defendants offered before trial, Dkt. 251 at 3. Counsel obtained a result that was far above what the defendants continue to assert the case was worth. This factor supports an enhanced fee award.

The tenth *Kerr* factor, the "undesirability of the case," also supports lifting the presumptive PLRA rate cap. Maddaus struggled to obtain and retain counsel in this case. His initial counsel did not even place a lien on the case when he withdrew. Maddaus survived a barrage of motions pro se, and the Court had difficulty finding him counsel. He did not have an expert, discovery was closed, and the new client was incarcerated. Most of his claims against most of the defendants had been dismissed when counsel appeared. Defendants had offered little or nothing to settle the case. Maddaus's § 1983 case against Edwards and Kroha was not "desirable" when counsel was appointed. And counsel correctly emphasizes a point of which the Court is well aware: it is important to encourage attorneys to accept pro bono cases. This factor weighs in favor of an enhanced attorneys' fee award.

1    The parties view the final *Kerr* factor, "awards in similar cases," as requiring
2 analysis of whether courts in similar cases have lifted the PLRA cap. Maddaus cites
3 *Kelly*, *Edmo*, and an unpublished case, *Bown v. Reinke*, No. 1:12-CV-262-BLW, 2016
4 WL 2930904, at *3 (D. Idaho May 19, 2016), for the proposition that courts in similar
5 cases have awarded fees in excess of the presumptive PLRA hourly cap. Defendants
6 argue that the attorneys in those cases faced even longer odds than did Maddaus's
7 attorneys here. Dkt. 258 at 9–10. Even if the Court accepts that the facts are
8 distinguishing, it is not persuaded that Maddaus's counsel's enhanced fee request should
9 be denied because the case was not extraordinary or unusual, because it was.

10    The final consideration raised in Maddaus's motion is the PLRA's requirement
11 that the fees awarded be "proportionate" to the result obtained. 42 U.S.C. § 1997e(d)(2);
12 *Kelly* at 1101. The PLRA ensures this outcome by capping a fee award at 150% of the
13 judgment. *Id*. Maddaus seeks a fee award of about 62% of his $402,000 verdict. Under
14 the PLRA, 25% of any fee award (here $100,500) must come from the judgment.

15    Under these factors, the Court concludes that the PLRA presumptive cap should
16 not be strictly applied because doing so in the circumstances of this case would deprive
17 counsel of a well-earned reasonable attorneys' fee.

18    The Court will reduce the hours requested from 674.8 (49.5 in 2023, 564.7 in
19 2024, and 60.6 spent on post-judgment motions) to **650 hours**. It will award fees at a
20 "blended" reasonable rate of **$380 per hour**, a rate that is significantly more than the
21 PLRA's presumptive cap but still somewhat less than the rates requested, and less than
22 the rates prevailing in the community for experienced litigators The deductions are

intended to account for any inefficiencies reflected in the records, and the defendants' objections to an enhanced fee. The Court concludes that a reasonable fee for counsel's work, including post-judgment motion practice, is **$247,000**.

**B.  Costs.**

Maddaus's request for $9,486.62 in reimbursable costs includes $3,500 paid to an expert retained by Maddaus's prior counsel. That expert did not testify at trial. The Court agrees that that portion of the cost should not be paid by the defendants. It will award **$5,986.62** in costs.

The clerk shall enter an amended judgment reflecting the award of $247,000 in fees and $5,986.62 in costs. These amounts will earn post-judgment interest at the federal rate from the date the amended judgment is entered.

**IT IS SO ORDERED**.

Dated this 7th day of February, 2025.

_____
BENJAMIN H. SETTLE
United States District Judge